**A. T. BROD & CO., Appellant,**

v.

**Jack PERLOW and Adele Perlow, also known as Adele Wagner, Appellees.**

**No. 373, Docket 31028.**

United States Court of Appeals Second Circuit.

Argued March 14, 1967.

Decided March 27, 1967.

Stanley Kligfeld, New York City, for appellant.

Charles P. Axelrod, New York City (Heller & Pierce, Philip Pierce, Robert M. Heller, New York City, on the brief), for appellees.

Philip A. Loomis, Jr., Gen. Counsel, David Ferber, Solicitor, Richard M. Phillips, Asst. Gen. Counsel, Roy Nerenberg, Atty., S. E. C., Washington, D. C., as amicus curiae.

Before KAUFMAN, ANDERSON and FEINBERG, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

The sole issue presented for our disposition is whether Judge Bonsal properly concluded that the District Court lacked subject matter jurisdiction to entertain the complaint brought by A. T. Brod & Co. (Brod) against Jack and Adele Perlow (Perlows), the appellees. Brod, a member of the New York Stock Exchange brought its complaint under § 10 (b) of the Securities Exchange Act of 1934 (Act), 15 U.S.C. § 78j(b), and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. 240.10b–5, and

sought monetary damages to compensate for the losses it suffered as a result of the Perlows' alleged fraudulent failure to pay for securities they had ordered through Brod, as broker. The Perlows' motion to dismiss the complaint was made pursuant to Rule 12(b) of the Federal Rules of Civil Procedure and was granted by Judge Bonsal.[1]

We recognize that in reviewing a dismissal of a complaint for a failure on its face to sufficiently allege jurisdiction, we must accept the allegations in that complaint as true. See Vine v. Beneficial Finance Co., 374 F.2d 627 (2d Cir., March 13, 1967); Moore's Federal Practice § 12.08. Brod's complaint alleged that the Perlows placed orders with various brokers and dealers to purchase securities listed for trading on the New York Stock Exchange (Exchange) with the fraudulent intent of paying for the securities only if their market value had increased by the date payment was due. On September 28, 1966, acting pursuant to a purchase order placed by the Perlows, Brod bought for their account 100 shares of S-C-M Corporation, listed on the exchange at 62⅜, and 100 shares of General Instrument Corporation, listed at 54⅛. The complaint further charged that the price of these securities declined by the payment date, and the Perlows, in accordance with their deceptive plan, refused to pay for the securities; as a result of this fraudulent action, Brod was compelled to sell the securities, thereby incurring a loss of $3,330.34. It is Brod's contention that this "heads I win, tails you lose" scheme, allegedly employed by the Perlows, constitutes a "manipulative or deceptive device or contrivance" in contravention of § 10(b) and Rule 10b–5, and that the District Court therefore had jurisdiction to entertain the complaint which sought damages.

It should be noted at the outset that the parties are not of diverse citizenship, and that the damages alleged

1. Pursuant to Rule 64 of the Federal Rules of Civil Procedure and Article 62 of the New York Civil Practice Law and Rules, appellant obtained an order of attachment on appellees' property located within the State of New York. Judge Bonsal's order dismissing the complaint, also vacated that order of attachment.

are less than $10,000. The only possible basis of jurisdiction, therefore, is the Perlows' alleged violation of § 10(b) and Rule 10b–5. And, while both sections are criminal in nature, it is well settled that they create an implied civil right of action. See, e. g., Fischman v. Raytheon Mfg. Co., 188 F.2d 783 (2d Cir. 1951); Fratt v. Robinson, 203 F.2d 627, 37 A.L. R.2d 636 (9th Cir. 1953); cf. J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). But, Judge Bonsal concluded that, even on the assumption that the allegations in Brod's complaint were true, they did not set forth fraud or deceit in violation of § 10(b) or Rule 10b–5. His rationale for this holding was: "Plaintiff is not an investor, and no fraud is alleged as to the investment value of the securities nor any fraud 'usually associated with the sale or purchase of securities * * *'" We believe that this interpretation of § 10 (b) and Rule 10b–5 is much too narrow and that the District Court had subject matter jurisdiction to entertain Brod's complaint.

Our conclusion is based, in the main, on the language of the applicable provisions. Section 10(b) provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\* \* \* \* \* \*

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, *any manipulative or deceptive device or contrivance* in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. (Emphasis added.)

One of the Rules so prescribed by the Commission is Rule 10b–5, which states in part:

It shall be unlawful for any person, directly or indirectly, by the use of

any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(a) to employ any device, scheme, or artifice to defraud.

█ Neither § 10(b) nor Rule 10b–5, it appears, speaks in terms of limiting the nature of the violation to one involving fraud of "investors"; nor is there any justification for reading such an additional requirement into the Act. Section 10(b) was aimed at manipulative and deceptive devices which were employed "in connection with the purchase or sale of any security" and which contravened the rules and regulations established by the Commission. These rules and regulations were to be promulgated by the Commission *"in the public interest or* for the protection of investors." (Emphasis added.) Similarly Rule 10b–5, which prohibited fraudulent schemes in connection with the purchase and sale of securities, was designed to protect both investors *and* "the public interest." We cannot understand, therefore, any rationale which would restrict or inhibit appropriate private rights of action to enforce the Rule to those brought by "investors." See Hooper v. Mountain States Securities Corp., 282 F.2d 195 (5th Cir. 1960), cert. denied, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961). Moreover, such a barrier to a suit would not be in harmony with the Supreme Court's postulation that the securities laws should be construed "not technically and restrictively, but flexibly to effectuate * * * [their] remedial purposes." SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 195, 84 S.Ct. 275, 285, 11 L.Ed.2d 237 (1963).

█ For the same *ratio legis* we reject Judge Bonsal's holding that Brod's complaint must be dismissed because "no fraud is alleged as to the investment value of the securities nor any fraud 'usually associated with the sale or purchase of securities.'" Neither § 10(b) nor Rule 10b–5 contains any language which would indicate that those provi-

sions were intended to deal only with fraud as to the "investment value" of securities, and, indeed, it is established that a 10b-5 action will survive even though the fraudulent scheme or device is unrelated to "investment value." See Hooper v. Mountain States Securities Corp., supra (fraud with regard to the value of the consideration received for securities); Cooper v. North Jersey Trust Co., 226 F.Supp. 972 (S.D.N.Y. 1964) (conspiracy to defraud by selling pledged securities). Nor do we think it sound to dismiss a complaint merely because the alleged scheme does not involve the type of fraud that is "usually associated with the sale or purchase of securities." We believe that § 10(b) and Rule 10b-5 prohibit *all* fraudulent schemes in connection with the purchase or sale of securities, whether the artifices employed involve a garden type variety of fraud, or present a unique form of deception. Novel or atypical methods should not provide immunity from the securities laws.

Proceeding on the assumption that the allegations in the complaint are true, and that any ambiguities must be resolved in favor of the pleading, it seems clear to us that Brod stated a claim which the District Court had jurisdiction to entertain. It is alleged that the Perlows employed a fraudulent scheme in connection with the purchase[2] of securities being traded on a national exchange. The complaint was filed by the purchaser[3] of the securities

to recover the losses it sustained as a result of the Perlows' fraudulent conduct.

Moreover, the practices allegedly employed by the Perlows will, if allowed to continue, exacerbate the very evils that the securities laws were designed to prevent. Indeed, the Securities and Exchange Commission, as *amicus curiæ,* has advised us that the artificial demand created by purchasing securities which are not to be paid for unless the market value of the stock rises, can have an unsettling and potentially manipulative effect on the securities market—contrary to the very purpose of the Act. The practices allegedly engaged in by the Perlows represent a violent form of speculation which serves no useful purpose except that the speculator always holds the trump card. Moreover, the Perlows' activities resulted, in effect, in an involuntary extension of credit without compliance with the margin requirements established pursuant to the Act, 15 U.S.C. § 78g, which restrict the use of credit for speculative purposes. The conduct engaged in by the appellees, if true, is fraudulent in nature, and the Commission has cited us to several uncontested cases where customers were enjoined from defrauding brokers through practices similar to those alleged in the present complaint.[4] We see no sound reason for inhibiting private actions aimed at such fraudulent activities for "private enforcement of the * * * [securities laws] provides a necessary supplement

---

2. The term "purchase" is defined by the Act to include "any contract to buy, purchase, or otherwise acquire" securities. 15 U.S.C. § 78c(13).

3. Prior decisions in this Circuit have been, on occasions, interpreted as standing for the rule that only a purchaser or seller may bring a Rule 10b-5 action. See, e. g., Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir.), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). The Commission, in recent cases, has urged that this interpretation of the Act is too narrow. See Vine v. Beneficial Finance Co., supra. We need not consider that contention since appellant is clearly a purchaser of securities.

4. Securities and Exchange Commission v. DuBovy, Civ. No. 1614, D.Maine, Oct. 6, 1966; Securities and Exchange Commission v. Greenwald, Civ. No. 60–1022, S.D. N.Y., Jan. 18, 1963; Securities and Exchange Commission v. Younger, Civ. No. 60–3006, S.D.N.Y., April 18, 1961; Securities and Exchange Commission v. Karal, Civ. No. 60–661–S, D.Mass., Nov. 21, 1960; Securities and Exchange Commission v. Greenspan, Civ. No. 60–4179, S.D. N.Y., Nov. 10, 1960; Securities and Exchange Commission v. Dick, Civ. No. 60–1578, S.D.N.Y., April 19, 1960; Securities and Exchange Commission v. Loewe, Civ. No. 154–115, S.D.N.Y., Dec. 23, 1959; Securities and Exchange Commission v.

to Commission action." J. I. Case Co. v. Borak, supra at 432, 84 S.Ct. at 1560.

 It is true, of course, as the Perlows submit, that Brod has not *proven* that the Perlows' failure to make payment constituted a "device, scheme, or artifice to defraud." Indeed, we recognize that not every failure by a customer to pay for securities ordered adds up to a violation of the securities laws. But, whether there is actionable fraud or a mere breach of contract depends on the facts and circumstances developed at the trial or on motion for summary judgment. Brod was not required to *prove* in its complaint that it was entitled to an ultimate recovery, nor was it required to set forth in its complaint a detailed statement of the facts. Rule 8(a) of the Federal Rules of Civil Procedure requires only that a complaint contain "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends * * * (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief to which he deems himself entitled." Such simplified "notice pleading" requires that the complaint be construed liberally, see Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Dioguardi v. Durning, 139 F.2d 774 (2d Cir. 1944); and "jurisdiction * * * is not defeated * * * by the possibility that the averments might fail to state a cause of action on which * * * [the pleader] could actually recover." Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

 The pleading rules, designed to avoid and reduce long and technical allegations, are necessarily supplemented by procedures, including summary judgment, which enable a party to have a judgment in a relatively short time if there is actually no bona fide claim presented.[5] The Perlows are at liberty to avail themselves of these procedures and thereby seek to avoid what otherwise might be protracted litigation. But, accepting Brod's allegations as true, as we have indicated we must on a motion to dismiss the complaint, it is clear that the complaint sufficiently stated a claim grounded in federal jurisdiction. The order and judgment of the District Court dismissing the complaint for lack of subject matter jurisdiction must, therefore, be vacated and reversed.[6]

Kevin, Civ. No. 154–68, S.D.N.Y., Dec. 21, 1959; Securities and Exchange Commission v. Bialkin, Civ. No. 152–319, S.D. N.Y., Nov. 13, 1959; Securities and Exchange Commission v. Hamilton, Civ. No. 54–705W, D.Mass., Sept. 17, 1954.

5. See, e. g., Rule 16 (pretrial procedure and formulation of issues); Rules 26–37 (depositions and discovery); Rule 56 (motion for summary judgment).

6. As previously noted, Judge Bonsal also vacated the order of attachment that appellant had obtained. Apparently the only reason for vacating that order was his conclusion that the District Court lacked subject matter jurisdiction. Since we find that the court had jurisdiction, the District Court will enter such order as is necessary to reinstate the order of attachment.