**E. L. AARON & CO., Inc., Plaintiff,**

v.

**William FREE, Defendant.**

**No. 71 Civ. 2477.**

United States District Court,
S. D. New York.

Aug. 9, 1972.

**402**

Dan Brecher, New York City, for plaintiff.

William Free, pro se.

GURFEIN, District Judge.

This is an unopposed motion by the plaintiff for summary judgment pursuant to Fed.R.Civ.P. 56(a). Invoking jurisdiction under Section 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77v, and Section 27 of the Securities and Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78aa, the plaintiff charges violation of Sections 12 and 17(a) of the Securities Act, 15 U.S.C. §§ 77*l*, 77q, and of Section 10(b) of the Exchange Act, 15 U.S. C. § 78j(b), and Rule 10b–5, 17 C.F.R. 240.10b–5.

The following facts are taken from the complaint and the plaintiff's statement of undisputed material facts filed pursuant to Local General Rule 9(g) of this Court:

The plaintiff is a New York broker dealer with whom the defendant, a Nevada resident, maintained an account for the purchase and sale of securities. On or about August 28, 1970 the defendant through the plaintiff purchased 2500 shares of Chill Can Industries with a personal check in the amount of $9,000 drawn on a Utah bank. The check was returned to the plaintiff unpaid. The defendant knew or should have known when he tendered the check that it would not be honored. As a result of the fraud the plaintiff sustained a loss in the amount of $5,968.75. The plaintiff demands judgment in this amount plus $50,000 exemplary damages "because of the malicious nature of the defendant's actions."

As a matter of law the claims under Sections 12 and 17(a) of the Securities Act must be dismissed. Fed.R. Civ.P. 12(b) (6). Those sections create civil liabilities in favor of buyers as against sellers of securities. The defendant here is not a seller. See Continental Bank & Trust Company of Salt Lake City v. Garfinkle, 292 F.Supp. 709, 711–712 (S.D.N.Y.1968). The plaintiff must base his claim on Section 10(b) of the Exchange Act and Rule 10b–5 thereunder.[1]

---

1. Section 10(b) provides:
   "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
   \* \* \*
   (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of

such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."
Rule 10b–5 provides:
   "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,
   (a) to employ any device, scheme, or artifice to defraud,

Whether the passing of a bad check in payment for securities is a fraudulent act for which the securities law imposes liability is a question without a ready answer. A. T. Brod & Co. v. Perlow, 375 F.2d 393, 398 (2 Cir. 1967).

*Brod* involved a claim by a broker that the defendant customers "placed orders with various brokers and dealers to purchase securities . . . with the fraudulent intent of paying for the securities only if their market value had increased by the date payment was due." Id. at 395. Noting that § 10(b) refers to the "contravention of . . . rules and regulations . . . necessary or appropriate in the public interest or for the protection of investors," the Court of Appeals found that there was federal subject matter jurisdiction where the practices alleged would "exacerbate the very evils that the securities laws were designed to prevent." Id. at 397.

A district court recently denied a motion to dismiss brought pursuant to Fed.R.Civ.P. 12(b) (6) where the plaintiff seller alleged a violation of § 10(b) of the 1934 Act in that the defendant purchaser never intended to make full payment for stock conveyed to him. Richardson v. Salinas, 336 F.Supp. 997 (N.D.Tex.1972). But the Court noted that "[o]n trial of this case, plaintiff may be able to prove no more than breach of contract." It decided in favor of "fuller development of the case rather than by terminating it at this preliminary stage." 336 F.Supp. at 1002.

We have the converse here—not a question of the adequacy of a complaint on motion to dismiss, but of a motion for summary judgment by the plaintiff. The complaint itself does not allege that the defendant, as in *Brod* and *Richardson, supra,* did not intend to pay when he ordered the stock. It alleges merely that he tendered a check, presumably after the purchase order was given which "he knew or should have known would not be honored by [said] bank."

While this could conceivably be said to be "in connection with" the purchase and sale of the securities, we know of no case where fraudulent action or intent was held to be within the range of Rule 10b(5) and which did not involve the purchase or sale of a security rather than merely the means for effecting subsequent payment and we have, indeed, been warned in *Brod, supra,* "that not every failure by a customer to pay for securities ordered adds up to a violation of the securities laws." 375 F.2d at 398.

Since we are moving into an area where the boundary between breach of contract and federal securities fraud is thin, it seems to me that any extension of federal jurisdiction here must turn on proven facts. Only by a case to case method can there be ultimate reconciliation between the reasons for not converting simple contract actions or actions for goods sold and delivered into federal cases, and the reasons for making all kinds of fraud in connection with the purchase and sale of securities actionable in the federal courts. See Richardson v. McArthur, 451 F.2d 35, 40 (10 Cir. 1971).

For these reasons, and because proof of the amount of the damages claimed is not clear, the motion of the plaintiff for summary judgment is denied.

It is so ordered.

(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."