**Dean WALLING et al., Plaintiffs-Appellants,**

v.

**BEVERLY ENTERPRISES, a California corporation, Defendant-Appellee.**

**No. 71–1510.**

United States Court of Appeals, Ninth Circuit.

April 9, 1973.

---

John P. Hanrahan (argued), Los Angeles, Cal., for plaintiffs-appellants.

Thomas H. McGovern (argued), William F. Rinehart, H. Stephen Cranston, MacDonald, Halsted & Laybourne, Los Angeles, Cal., for defendant-appellee.

Before MERRILL, HUFSTEDLER, and CHOY, Circuit Judges.

CHOY, Circuit Judge:

Appellants (West Texas Shareholders), owners of all the shares of West Texas Medical Center, Inc. (West Texas), a Texas corporation, brought this action against Beverly Enterprises (Beverly), a California corporation, for alleged violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b),[1] and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5,[2] and for breach of contract. Federal jurisdiction is based solely on the securities law violations.[3]

The district court held that West Texas Shareholders had failed to state a claim for relief under federal securities law and therefore dismissed the action for lack of subject matter jurisdiction. The validity of this ruling is the sole issue presented on appeal. We reverse.

The federal securities claim asserted by West Texas Shareholders arose from an agreement dated August 26, 1969, between Beverly and West Texas Shareholders, for an exchange of all of the common stock of West Texas for common stock of Beverly. The total value of the Beverly stock consideration, $2,700,000, was payable in one down payment and three annual installments. Each of the four payments was to have a fixed value of $675,000 and the number of shares to be issued representing each payment was to be determined by the average closing price of Beverly stock on the American Stock Exchange during the ten day trading period preceding the payment date of the installment. Thus, substantial fluctuations in the trading price of Beverly stock would have a significant effect on the consideration West Texas Shareholders were to receive.

The arrangement, however, was never consummated because Beverly refused to proceed, claiming that it had received information that West Texas's hospital building was in need of major repair and that it could not obtain a firm commitment from its own insurance carrier to include West Texas within its insurance plan. West Texas Shareholders attempted to accommodate Beverly, but the parties were unable to settle their differences and this suit was filed.

In reviewing a dismissal of a complaint for failure to sufficiently allege jurisdiction, we must accept the allegations in the complaint as true. Vine v. Beneficial Finance Co., Inc., 374 F.2d

1. In pertinent part, Section 10(b) provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
*     *     *     *     *
(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

2. The rule provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
(a) To employ any device, scheme, or. artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security."

3. The breach of contract claims are included under the doctrine of pendent jurisdiction. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

627 (2nd Cir.), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967); 2A J. Moore, Federal Practice ¶ 12.08 (2d ed. 1972). Disregarding the inordinate verbiage in their amended complaint, West Texas Shareholders in substance allege that Beverly entered into the reorganization agreement with the intent not to perform its obligations unless it later determined that it was in its best interests to do so, and that Beverly intended to raise and did raise fictitious excuses for refusing to fulfill the agreement. Alternatively, West Texas Shareholders allege that Beverly executed the agreement with the intent to speculate on fluctuations of the price of its stock at the expense of West Texas Shareholders,[4] and that Beverly executed the agreement with the intent of refusing to consummate the reorganization unless it could obtain additional concessions from them to which it was not legally entitled. West Texas Shareholders also allege that Beverly established a pattern in its acquisition program of entering into other reorganization agreements with stockholders of other corporations with only a limited intention of performing. West Texas Shareholders contend that the above actions constitute acts, practices, or a course of business which operated as a fraud or deceit upon them under § 10(b) and Rule 10b(5).

■ We must decide whether entering into a contract to sell securities with only a limited intention of performing is a fraud cognizable under § 10(b) and Rule 10b–5 and whether the allegations of fraud in this complaint are sufficiently well pleaded.[5] We hold that the district court erred in dismissing this action.

■ At the outset we note that "[s]ection 10(b) must be read flexibly, not technically and restrictively. Since there was a 'sale' of a security and since fraud was used 'in connection with' it, there is redress under § 10(b), whatever might be available as a remedy under state law." Supt. of Insurance v. Bankers Life & Cas. Co., 404 U.S. 6, 12, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1971). "And the fact that the transaction is not conducted through a securities exchange or an organized over-the-counter market is irrelevant to the coverage of § 10(b)." *Bankers Life, supra* at 10, 92 S.Ct. at 168. Likewise "[n]either § 10(b) nor Rule 10b–5 contains any language which would indicate that those provisions were intended to deal only with fraud as to the 'investment value' of securities . . . ." A. T. Brod & Co. v. Perlow, 375 F.2d 393, 396–397 (2nd Cir. 1967).

■■ Proceeding on the assumption that the allegations in the complaint are true, and that any ambiguities must be resolved in favor of the pleading, Gillibeau v. City of Richmond, 417 F.2d 426, 430 (9th Cir. 1969), it seems clear that West Texas Shareholders have stated a claim which the district court had jurisdiction to entertain. Entering into a contract of sale with the secret reservation not to fully perform it is fraud cognizable under § 10(b).[6]

We think the case at bar is governed by the rationale expressed in *Perlow, supra* and Commerce Reporting Co. v. Puretec, Inc., 290 F.Supp. 715 (S.D.N.Y.

---

4. It should be noted that Beverly's stock has in fact fluctuated widely. In September, 1969 the stock was selling at approximately $27 per share. Since then it has traded for as high as $45 per share and as low as $9 per share.

5. There is a sufficient contractual relationship so that West Texas Shareholders have standing as purchasers or sellers under the rationale of the "aborted purchaser-seller" cases. Mount Clemens Industries, Inc. v. Bell, 464 F.2d 339, 342 (9th Cir. 1972).

6. "It has been the law under the mail fraud statute ever since a Supreme Court decision in 1896 [Durland v. United States, 161 U.S. 306, 16 S.Ct. 508, 40 L.Ed. 709] that 'to promise what one does not mean to perform, or to declare an opinion as to future events which one does not hold, is a fraud.'" 3 L. Loss, Securities Regulation 1436–47 (1st ed. 1961); *accord,* Keers and Co. v. American Steel and Pump Corp., 234 F.Supp. 201, 203 (S.D.N.Y.1964).

1968). *Perlow* involved an action by a broker against his customers to recover the losses suffered by the broker when the customers refused to pay for securities they had ordered but which had dropped in price. The broker alleged that the customers placed buy orders with the intent of paying for the securities only if the market value increased. The Second Circuit found that this was a fraudulent scheme.

In direct accord with *Perlow* and perhaps more in point is *Puretec,* where the plaintiffs alleged that the defendant contracted to sell defendant's stock to plaintiffs without any intention of consummating the deal if they could obtain a better price and terms from someone else. The court found that properly pled such allegations were sufficient to support a § 10(b) claim.

■ Beverly, however, contends that the district court properly dismissed the action because the complaint does not sufficiently allege fraud in that it fails to meet the requirements of F.R.Civ.P. 9(b) [7] because no acts, words or other conduct are alleged showing its intent or state of mind at the time of the execution of the agreement.

■ Rule 9(b) requires that the circumstances constituting fraud must be stated with particularity. But "[r]ule 9(b) does not require nor make legitimate the pleading of detailed evidentiary matter." 2A J. Moore, Federal Practice ¶ 9.03, at 1930 (2d ed. 1972). Nor does Rule 9(b) require any particularity in connection with an averment of intent, knowledge or condition of the mind. It only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations. Trussell v. United Underwriters, Ltd., 228 F.Supp. 757, 774 (D.Colo.1964);

Gottlieb v. Sandia American Corp., 35 F.R.D. 223, 224 (E.D.Pa.1964).

Therefore, while mere conclusory allegations to the effect that defendant's conduct was fraudulent in violation of Rule 10b–5 are insufficient, Shemtob v. Shearson, Hammill & Co., 448 F.2d 442, 444 (2nd Cir. 1971), here West Texas Shareholders have done much more. They have stated the time, place and nature of the alleged fraudulent activities. The fraud was entering into the August 26, 1969 agreement with only a limited intention of performing. This is a sufficient averment. 2A J. Moore, Federal Practice ¶ 9.03, at 1925–28 (2d ed. 1972). The circumstances constituting the alleged fraud have been pled with sufficient definiteness to advise Beverly of the claim it must meet. Rekeweg v. Federal Mutual Insurance Co., 27 F.R.D. 431, 434 (N.D.Indiana 1961), aff'd on other grounds, 324 F.2d 150 (7th Cir. 1963), cert. denied, 376 U.S. 943, 84 S.Ct. 798, 11 L.Ed.2d 767 (1964).

■ However, we want to make it clear that as the court in *Perlow, supra,* said, West Texas Shareholders have not *proven* that Beverly's failure to consummate the agreement constituted a device or artifice to defraud. Not every breach of a stock sale agreement adds up to a violation of the securities law. Whether there is actionable fraud or a mere breach of contract depends on the facts and circumstances developed at the trial or on a motion for summary judgment.[8] The pleading rules, designed to avoid and reduce long and technical allegations, are necessarily supplemented by procedures including summary judgment which enable a party to have a judgment in a relatively short time if there is actually no bona fide claim presented. Beverly is at liberty to avail itself of these procedures and thereby seek to avoid what otherwise might be protract-

7. Rule 9(b) provides:
"Fraud, Mistake, Condition of the Mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

8. We note that Beverly's intent at the time it entered the agreement may be proven by reference to subsequent events.

ed litigation. *Perlow, supra,* 375 F.2d at 398.

■ Moreover, if the federal claim is dismissed prior to trial, the state claims should be dismissed as well so that federal jurisdiction will not be abused. United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Lanning v. Serwold, 474 F.2d 716 (9th Cir., 1973).

Reversed and remanded.