PRODUCTION RESOURCE GROUP, L.L.C., Plaintiff,

v.

STONEBRIDGE PARTNERS EQUITY FUND, L.P., Four Star Associates, LP, Michael S. Bruno, Jr., David A. Zackrison, Bill L. Aishman, Anthony P. Cancellieri, and Darren Deverna, Defendants.

No. 98 Civ. 466 (MGC).

United States District Court, S.D. New York.

May 22, 1998.

Kasowitz, Benson, Torres & Friedman, LLP, New York City by Marc E. Kasowitz, Michael C. Harwood, Joseph T. Moldovan, for Plaintiff.

Parcher, Hayes & Liebman, P.C., New York City by Orin S. Snyder, Peter Shimamoto, Alon Markowitz, Jill K. Israeloff, for Defendants.

### OPINION

CEDARBAUM, Senior District Judge.

This is an action by the would-be purchaser of all the stock of Four Star Holdings, Inc. ("Four Star Holdings") complaining of defendants' failure to consummate an alleged agreement for the sale of the company to plaintiff. Defendants move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons discussed below, plaintiff's securities fraud claim is dismissed for failure to meet the "in connection

with" requirement of the federal securities law. The state claims are dismissed pursuant to 28 U.S.C. § 1367(c)(3).

Plaintiff Production Resource Group, L.L.C. ("PRG") is a Delaware corporation with its principal place of business in New York. Defendants Stonebridge Partners Equity Fund, L.P. ("Stonebridge") and Four Star Associates, LP are limited partnerships organized under Delaware law with their principal places of business in New York, and are shareholders of Four Star Holdings. Defendants Michael S. Bruno, Jr. and David A. Zackrison, New York residents, are general partners of Stonebridge. Defendants Bill L. Aishman, a Connecticut resident, and Anthony P. Cancellieri and Darren DeVerna, New York residents, are shareholders of Four Star Holdings.

The complaint asserts that defendants Stonebridge, Bruno and Zackrison violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5, which prohibit fraudulent, material misstatements or omissions in connection with the sale or purchase of a security.[1] The complaint also asserts claims for common law fraud, negligent misrepresentation, promissory estoppel, breach of contract and breach of duty to negotiate in good faith. The complaint seeks compensatory damages, punitive damages and specific performance. Defendants' principal argument in support of their motion to dismiss is that the parties never entered into a binding agreement for the sale of the stock of Four Star Holdings. Defendants point to writings allegedly exchanged during negotiations that purportedly demonstrate that the parties intended to be bound only by a written stock purchase agreement.

Subject matter jurisdiction is premised on 28 U.S.C. § 1331, because the complaint asserts a claim for violation of the federal securities laws, and on supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Thus, subject matter jurisdiction depends on the securities fraud claim. Wholly apart from defendants' contention that the parties never entered into a contract for the sale of securities, there is a serious question as to whether the complaint states a claim for violation of § 10(b) of the Securities Exchange Act. Accordingly, the parties were directed to submit supplemental memoranda of law on the issue of whether the complaint states a claim under § 10(b), in light of that section's requirement that the alleged fraud be "in connection with" securities and not other aspects of a transaction in which securities are sold. The parties have submitted memoranda on this issue.

## ALLEGATIONS OF THE COMPLAINT

The complaint sets out the following allegations, which must be taken as true on this motion to dismiss. Plaintiff is a supplier of various products, including scenery, lighting and computerized control systems, for live entertainment productions, corporate events and themed entertainment. Four Star Lighting, Inc. ("Four Star Lighting"), a wholly owned subsidiary of Four Star Holdings, is a supplier of theatrical lighting systems for Broadway plays, and controls almost three-fourths of the market for such business. Plaintiff desired to increase its position in the market for theatrical lighting for Broadway shows. Accordingly, in the spring of 1997, plaintiff and defendants commenced discussions concerning the acquisition by plaintiff of Four Star Holdings ("the Acquisition").

On November 26, 1997, after negotiations concerning the Acquisition had taken place between the spring of 1997 and September 1997, defendant Bruno, acting on behalf of all defendants, told plaintiff that "the defendants were dealing exclusively with PRG concerning the sale of Four Star [Holdings] and that they would accept PRG's offer of $22 million" for Four Star Holdings. The parties agreed that the closing of the Acquisition would take place after plaintiff completed a $100 million bond offering. That offering was completed in the third week of December, 1997.

On December 23, 1997, several of plaintiff's officers met with defendants Bruno and Zackrison and an attorney for defendants. Stonebridge asked plaintiff, and plaintiff

---

1. The complaint asserts only state law claims against the remaining defendants.

agreed, to increase the purchase price to $23,250,000 to reflect certain capital expenditures that Four Star Holdings had made since the spring. Bruno "attempted to extract an additional $1 million from PRG," but withdrew the request during a series of telephone calls on the evening of December 23.

On the following day, December 24, plaintiff sent a draft letter of intent to Zackrison at Stonebridge containing the terms the parties had discussed, as well as some additional provisions concerning the Acquisition. Later that day, Bruno advised plaintiff that defendants would not agree to the additional terms in the letter of intent, but that they would be "happy to sell" Four Star Holdings to plaintiff in accordance with the terms agreed to at the December 23 meeting and that under those terms, "the deal is yours." On December 31, Bruno reiterated to plaintiff that defendants intended to execute a written document "memorializing" the terms of the Acquisition discussed on December 23. Bruno also reiterated that the defendants were and had been dealing exclusively with plaintiff in connection with the sale of Four Star Holdings, and that they were not talking to anybody else and would not do so.

At a meeting on January 7, 1998, the parties agreed to the final terms of the Acquisition, a written agreement was finalized and printed, and the parties shook hands on the completion of the transaction. It was understood and intended by the parties that they had entered into an enforceable agreement that was to be memorialized by the signing of the written agreement. Plaintiff agreed to exchange signature pages on January 9, 1998, based on Bruno's assurance that the parties "had a deal" and on defendants' representations that a schedule to the written agreement would be available on January 9, 1998. Bruno also told plaintiff that defendants had received an unsolicited letter of intent from another party offering $28 million for Four Star Holdings, but that Bruno was not going to return the phone call because the defendants had reached a deal with plaintiff.

However, defendants failed to transmit an executed copy of the written agreement to plaintiff on January 9, 1998, and on January 13, 1998, Zackrison advised plaintiff that defendants were reneging on the Acquisition and that defendants were on the verge of selling Four Star Holdings to another party for a higher price than plaintiff had agreed to pay. Since then, defendants have refused to honor their contractual commitment to sell Four Star Holdings to plaintiff.

Plaintiff asserts that defendants Stonebridge, Bruno and Zackrison, acting in interstate commerce, engaged in manipulative and deceptive acts and practices and a course of business which operated as a fraud upon plaintiff in connection with the Acquisition. Specifically, plaintiff asserts that these defendants intentionally or recklessly made material representations of fact to plaintiff that were false in that: (a) defendants were not negotiating exclusively with plaintiff; (b) defendants had no intention of consummating the Acquisition with plaintiff, but were using plaintiff as a "stalking horse" to obtain higher offers for Four Star Holdings; (c) defendants were not negotiating with plaintiff in good faith; and (d) defendants had no intention of signing a written agreement with plaintiff. Plaintiff asserts that it relied to its detriment on defendants' misrepresentations by not pursuing new business opportunities and acquisitions.

## DISCUSSION

Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b–5 promulgated thereunder, prohibit any person from using or employing "in connection with the purchase or sale of any security" any "manipulative or deceptive device or contrivance." 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5. To state a claim under § 10(b), a plaintiff "must allege material misstatements or omissions indicating an intent to deceive or defraud in connection with the purchase or sale of a security." *McMahan & Co. v. Wherehouse Entertainment, Inc.*, 900 F.2d 576, 581 (2d Cir.1990), *cert. denied*, 501 U.S. 1249, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991) (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)). A contract to purchase or sell securities is itself a security, and therefore can form the basis for a § 10(b) claim even if the contract is

breached and no securities are actually bought or sold. *See Chariot Group, Inc. v. American Acquisition Partners, L.P.*, 751 F.Supp. 1144, 1149 (S.D.N.Y.1990) (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975)), *aff'd*, 932 F.2d 956 (2d Cir.1991); 15 U.S.C. § 78c(a)(13) ("[t]he terms 'buy' and 'purchase' each include any contract to buy, purchase or otherwise acquire").

The Court of Appeals has held that the "in connection with" requirement of § 10(b) means that a misrepresentation involved in a securities transaction, but not pertaining to the securities themselves, cannot form the basis of a § 10(b) or Rule 10b–5 claim. *See Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 943 (2d Cir.), *cert. denied*, 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984). In *Chemical Bank*, a corporation borrowed money from the plaintiff bank based on misleading audits prepared by the defendant, the borrower's accountant. The corporation had pledged the stock of a subsidiary as collateral for the loan. The court held that plaintiff did not state a claim for securities fraud because the alleged misrepresentations did not relate to the pledged securities. *Id.* The court explained that

> [t]he purpose of § 10(b) and Rule 10b–5 is to protect persons who are deceived in securities transactions—to make sure that buyers of securities get what they think they are getting and that sellers of securities are not tricked into parting with something for a price known to the buyer to be inadequate or for a consideration known to the buyer not to be what it purports to be.

*Id.*

Similarly, in *Saxe v. E.F. Hutton & Co., Inc.*, 789 F.2d 105 (2d Cir.1986), plaintiff alleged that the defendant broker fraudulently induced him to liquidate his stock portfolio in order to invest in commodity futures. The court affirmed the dismissal of plaintiff's § 10(b) claim because the alleged misrepresentations did not "concern[ ] the value of the securities he sold or the consideration he received in return." *Id.* at 108. "In this regard," the court stated, "our holding in [*Chemical Bank*] is controlling." *Id.*

Numerous decisions in this district have applied *Chemical Bank* to dismiss securities fraud claims when the alleged misrepresentations did not pertain to the "fundamental nature" of the securities: "namely, characteristics and attributes that would induce an investor to buy or sell the particular [securities]." *Manufacturers Hanover Trust Co. v. Smith Barney, Harris Upham & Co.*, 770 F.Supp. 176, 181 (S.D.N.Y.1991) (dismissing § 10(b) claim in case alleging fraudulent conversion of securities). In *Alex, Brown & Sons Inc. v. Marine Midland Banks, Inc.*, 1997 WL 97837 (S.D.N.Y. Mar.6, 1997), for example, the court dismissed the plaintiff's § 10(b) claim because the alleged misrepresentation by defendant did not "relate to the fundamental investment attributes of the securities" but instead related to whether the purchaser of the securities had funds available to effectuate the purchases. *Id.*, 1997 WL 97837 at *5; *see also Manela v. Garantia Banking Ltd.*, 5 F.Supp.2d 165, 1998 WL 230833, at *6–7 (S.D.N.Y. May 7, 1998) (deception regarding identity of seller was not relevant to the value of securities or consideration paid, and thus was not "in connection with" purchase or sale of securities); *Press v. Chemical Investment Servs. Corp.*, 988 F.Supp. 375, 388–89 (S.D.N.Y.1997) (failure to advise plaintiff that proceeds from investment would not be available on security's maturity date was not "in connection with" purchase of security); *Ernst & Co. v. Marine Midland Bank, N.A.*, 920 F.Supp. 58, 61 (S.D.N.Y. Mar.21, 1996) (alleged misrepresentation that funds would be available to effectuate securities transaction did not provide basis for § 10(b) claim); *Bissell v. Merrill Lynch & Co.*, 937 F.Supp. 237, 242–44 (S.D.N.Y.1996) (failure to disclose interest that was earned on collateral which was deposited to cover short sales of securities was not a misrepresentation "in connection with" the sale of securities); *Abrash v. Fox*, 805 F.Supp. 206, 209 (S.D.N.Y.1992) (misrepresentations of business advisor's qualifications, which induced plaintiffs to set up corporation, did not provide basis for § 10(b) claim).

The "in connection with" requirement, as construed by the Second Circuit in *Chemical Bank*, has been applied in cases in which defendants were alleged to have misrepre-

sented their intent to transfer securities to the plaintiff. In *Gurwara v. LyphoMed, Inc.*, 937 F.2d 380 (7th Cir.1991), the defendant company allegedly induced plaintiff to accept short-term disability status by representing that plaintiff would continue to be eligible under his stock option agreement with the company. Relying on *Chemical Bank*, the court held that the alleged misrepresentation was not "the type of misrepresentation Congress meant to proscribe through the federal securities laws." *Id.* at 383. Because the misrepresentation "did not go to the value of the stock at issue or the value of the consideration in return for it," the court affirmed the dismissal of plaintiff's action. *Id.; see also Kamberos v. Gallas*, 1997 WL 119952, at *2–3 (N.D.Ill. Mar.14, 1997) (misrepresentation concerning employee's entitlement to stock did not state a claim under Rule 10b–5). And, in *Zemans v. Karris*, 1989 WL 13161 (N.D.Ill. Feb.16, 1989), defendant made an offer to purchase all of the outstanding shares of a particular company, but allegedly did not intend to purchase any shares from plaintiffs. Citing the Second Circuit's decision in *Chemical Bank*, the court granted defendant's motion to dismiss. The court held that plaintiffs did not state a § 10(b) claim because they did not allege that they were tricked into selling securities for an inadequate price, but merely that defendant "misled them by failing to indicate his intention to refuse to buy their shares." *Id.*, 1989 WL 13161 at *1. To hold otherwise, the court noted, "would mean that every breach of contract claim involving securities could easily be converted into a federal cause of action." *Id.*

▮ Plaintiff's allegations in this case fail for the same reason as did the claims in the foregoing cases: the alleged misrepresentations made by defendants were not "in connection with" the purchase or sale of securities, because they did not pertain to the value, nature or investment characteristics of the securities at issue. Plaintiff alleges that these defendants intentionally or recklessly made material representations of fact that were false in that: (a) defendants were not negotiating exclusively with plaintiff; (b) defendants had no intention of consummating the Acquisition with plaintiff, but were using

plaintiff as a "stalking horse" to obtain higher offers for Four Star Holdings; (c) defendants were not negotiating with plaintiff in good faith; and (d) defendants had no intention of signing a written agreement with plaintiff concerning the Acquisition. None of these alleged misrepresentations "relate to the fundamental investment attributes of the securities," *Alex, Brown & Sons*, 1997 WL 97837, at *5, or "concern[ ] the value of the securities ... sold or the consideration ... received." *Saxe*, 789 F.2d at 108. The alleged misrepresentations relate only to whether defendants were negotiating solely with plaintiff and whether defendants intended to sell a business to plaintiff. Such misrepresentations did not pertain to the value of the stock of Four Star Holdings, and do not satisfy the "in connection with" requirement of the statute.

The cases cited by plaintiff do not alter this conclusion. In *In re Ames Dep't Stores Inc. Stock Litig.*, 991 F.2d 953 (2d Cir.1993), the fraud alleged was "a classic of the genre: according to plaintiffs, the defendants deliberately or recklessly deceived them by saturating the market with misleading information in an effort to prop up the price of Ames's stock." *Id.*, 991 F.2d at 962. The fraud in *Ames* directly affected the perceived value of the stock. Similarly, *Perez–Rubio v. Wyckoff*, 718 F.Supp. 217 (S.D.N.Y.1989), involved an ongoing and complex fraud in which the defendants loaned the assets of plaintiffs' securities accounts to a broker without plaintiffs' knowledge or benefit, and falsely advised plaintiffs that their investments were being conservatively invested and were appreciating in value. *See also United States v. Rudi*, 902 F.Supp. 452, 456–57 (S.D.N.Y.1995) (defendant's misrepresentations caused seller to part with securities for an inadequate price that was less than it would be but for the fraud); *Securities and Exchange Comm'n v. Drysdale Secs. Corp.*, 785 F.2d 38, 41 (2d Cir.) (alleged misrepresentations directly involved the consideration for securities transaction), *cert. denied*, 476 U.S. 1171, 106 S.Ct. 2894, 90 L.Ed.2d 981 (1986).

*A.T. Brod & Co. v. Perlow*, 375 F.2d 393 (2d Cir.1967), also is inapposite. In *Brod*,

defendants allegedly had engaged in an ongoing scheme whereby they placed orders with various brokers and dealers to purchase securities listed for trading on the New York Stock Exchange, but intended to pay for the securities only if their market value had increased by the date payment was due. Plaintiff, one of many defrauded brokers, sued to recover its loss after purchasing securities ordered by defendants. Defendants had refused to pay for the order when the securities declined in value between the purchase date and the payment date. *Id.* at 395. The value of the security was central to defendants' scheme. No such scheme is alleged in this case, and plaintiff is not complaining about the value of the stock in any respect. Moreover, the *Brod* court found that the defendants' alleged fraud would "exacerbate the very evils that the securities laws were designed to prevent" and would have "an unsettling and potentially manipulative effect on the securities market." *Id.* at 397.

While § 10(b) is to be broadly construed to accomplish its remedial purposes, the conduct alleged in this case—unlike that in *Brod*—is not the sort of evil that the securities laws were designed to prevent. As Judge Friendly noted in *Chemical Bank,* § 10(b) was enacted "to make sure that buyers of securities get what they think they are getting and that sellers of securities are not tricked into parting with something for a price known to the buyer to be inadequate or for a consideration known to the buyer not to be what it purports to be." 726 F.2d at 943. Plaintiff's only complaint is that defendants sold to someone else a business that plaintiff hoped to purchase. There is no claim that plaintiff purchased securities that were not what they were represented to be, or that the alleged conduct had any manipulative effect on the securities market.

The cases holding that a fraudulent promise made to induce a securities transaction may give rise to a claim under § 10(b) are also inapplicable. *See Luce v. Edelstein,* 802 F.2d 49, 55 (2d Cir.1986) ("making a specific promise to perform a particular act in the future while secretly intending not to perform that act may violate Section 10(b) where

the promise is part of the consideration for the transfer of securities"); *Pross v. Katz,* 784 F.2d 455, 457 (2d Cir.1986) (same); *Weiss v. Wittcoff,* 966 F.2d 109, 112 (2d Cir. 1992) (misrepresentation that defendants would supply plaintiff with goods in the future was an "important inducement in persuading" plaintiff to sell his stock); *Sulkow v. Crosstown Apparel Inc.,* 807 F.2d 33, 34–35 (2d Cir.1986) (misrepresentations that, among other things, plaintiff would become a director and would draw a salary if he purchased stock in defendants' company directly induced plaintiff to purchase stock). Those cases involved promises of conduct on the part of defendants that was to take place after the securities transaction, and such promises were part of the consideration for the transfer of securities. No such promises have been alleged in this case.

Moreover, plaintiff cannot save its section 10(b) claim by arguing in its brief that the alleged misrepresentations "related directly to PRG's decision to enter into the transaction and to the consideration offered by PRG for the securities." (Plaintiff. Supp. Mem. at 6.) Plaintiff cites the first two paragraphs of its complaint for this assertion, neither of which makes any statement regarding plaintiff's inducement to enter into an agreement or the consideration offered by plaintiff. (*See* Compl. ¶¶ 1–2.) In the entire complaint, the only allegation relating to inducement or reliance is that plaintiff relied on the alleged misrepresentations in not pursuing new business opportunities and acquisitions. (Compl. ¶ 32.)

Even if the complaint did claim that the alleged misrepresentations related directly to plaintiff's decision to enter into the transaction and to the consideration offered by plaintiff for the securities, such a conclusory assertion would not satisfy the "in connection with" requirement. Plaintiff does not even attempt to explain how misrepresentations that defendants were negotiating exclusively with plaintiff, and that the parties "had a deal," go to the value of the stock or the consideration offered for it. Such representations go only to whether the stock was available for purchase by plaintiff, and do not give rise to a § 10(b) claim. *See Gurwara,*

937 F.2d at 383; *Zemans,* 1989 WL 13161, at *1.

## CONCLUSION

For the foregoing reasons, plaintiff's claim under § 10(b) of the Securities Exchange Act and SEC Rule 10b–5 is dismissed for failure to state a claim upon which relief can be granted. Plaintiff's remaining claims are for violations of state law. In light of the dismissal of plaintiff's sole federal claim, I decline to exercise jurisdiction over those state law claims. 28 U.S.C. § 1367(c)(3). Accordingly, the entire complaint is dismissed.

SO ORDERED.