Tony H. HOFFMAN, individually and on behalf of all others similarly situated, Plaintiffs,

v.

TD WATERHOUSE INVESTOR SERVICES, INC. and John H. Chapel, Defendants.

No. 00CIV0958(MBM).

United States District Court, S.D. New York.

June 20, 2001.

James P. Bonner, Shalov Stone & Bonner, New York City, for Plaintiffs.

Dennis J. Johnson, Jacob B. Perkinson, Law Offices of Dennis J. Johnson, South Burlington, VT, for Plaintiffs.

David E. Nachman, Robert S. Frenchman, Solomon, Zauderer, Ellenhorn, Frischer & Sharp, New York City, for Defendants.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiffs Tony H. Hoffman, Reuben Hekmat, Thomas E. Maddux and Eileen Leung sue TD Waterhouse Investor Services, Inc. and John H. Chapel, the company's president, on behalf of themselves and a class of investors who maintained on-line trading accounts with TD Waterhouse. Plaintiffs allege violations of the Securities and Exchange Act of 1934 § 10(b), 15 U.S.C. § 78j (1997), and Rules 10b–3 and 10b–5 promulgated thereunder. They also allege violations of § 20(a) of the Securities and Exchange Act, 15 U.S.C. § 78t(a) (1997) and New York state law. Pursuant to Fed. R. Civ. Pro. 12(b)(6), defendants move to dismiss the complaint. For the reasons stated below, the motion is granted.

### I.

TD Waterhouse maintained an Internet site through which the company executed securities trades for its customers. (Comp.¶ 13) John H. Chapel was TD Waterhouse's president. (*Id.* at ¶ 14) Plaintiff Hoffman used TD Waterhouse's Internet site to place a buy order. (*Id.* at ¶ 39) Hoffman canceled the order four minutes later because the price was declining. (*Id.* at ¶ 40) TD Waterhouse confirmed on-screen that Hoffman's order was canceled. (*Id.* at ¶ 40) In addition, TD Waterhouse's "account order status screen" had deleted the purchase order from its list of pending orders. (*Id.* at ¶ 44) More than two hours after confirming cancellation of the purchase order, however, TD Waterhouse executed that trade. (*Id.* at ¶ 45) The other named plaintiffs similarly allege that TD Waterhouse executed their trades after the company had previously confirmed plaintiffs' orders to cancel those trades. (Id. at ¶¶ 54–69)

### II.

Section 10(b) prohibits fraud "in connection with the purchase or sale of any security." 15 U.S.C. § 78j. Defendants argue that their alleged misrepresentations were not "in connection with" the purchase or sale of any securities. For the defendants' misrepresentations to be "in connection with" a purchase or sale, they must concern the value of the securities purchased or sold, or the consideration received in return. *See Saxe v. E.F. Hutton & Co.,* 789 F.2d 105, 108 (2d Cir.1986)("Plaintiff did not allege that appellees misled him concerning the value of the securities he sold or the consideration he received in return.") Here, plaintiffs allege that defendants misled them about whether their buy and sell orders had been effectively canceled. Plaintiffs argue that these misrepresentations pertain to the se-

curities traded after the ineffective cancellation order. (Pl. Mem. at 14) However, for securities purchased after the ineffective cancellation, the misrepresentation does not concern their value. For securities sold after the ineffective cancellation, the misrepresentation does not concern the consideration received. Thus, defendants' misrepresentations do not satisfy § 10(b)'s "in connection with" requirement. Because TD Waterhouse is not liable under § 10(b), plaintiffs also fail to state a claim under § 20(a) of "controlling person" liability against Chapel. Accordingly, those claims are dismissed.

Plaintiffs devote much of their argument contesting the position—which they attribute incorrectly to defendants[1]—that to satisfy the "in connection with" requirement, a misrepresentation must concern the value of the security traded. (*Id.* at 12) Plaintiffs argue for an even broader standard which would encompass misrepresentations that "pertained" to the securities purchased or sold—whether or not they related to the securities' value. (*Id.* at 14) Plaintiffs cite a line in *Superintendent of Ins. v. Bankers Life & Casualty Co.*, 404 U.S. 6, 12–13, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971) in which the Court said that the "crux of the present case is that Manhattan suffered an injury as a result of deceptive practices *touching* its sale of securities ...." (emphasis added). (*Id.* at 10) Plaintiffs then argue that *Bankers Life* cited *A.T. Brod & Co. v. Perlow*, 375 F.2d 393 (2d Cir.1967) to reject the proposition

that "there can be no violation of Rule 10(b) where 'no fraud is alleged as to the investment value of the securities.'" (*Id.*) *Bankers Life* did not cite *A.T. Brod & Co.* for that proposition[2]; nevertheless, that case did reject the proposition that the misrepresentation must concern the securities' value, stating that a "10b–5 action will survive even though the fraudulent scheme or device is unrelated to 'investment value.'" *A.T. Brod & Co.*, 375 F.2d at 397.

However, neither *Bankers Life* nor *A.T. Brod & Co.* is inconsistent with the "in connection with" requirement as it subsequently developed in the Second Circuit, limiting Section 10(b) to misrepresentations concerning either the value of the security or the consideration received, because in both cases the misrepresentation related to the value of the consideration. *Bankers Life* described the misrepresentation as a "deceptive device which deprived [the seller] of any compensation for the sale of its valuable block of securities." *Bankers Life*, 404 U.S. at 10, 92 S.Ct. 165. *A.T. Brod & Co.* described the misrepresentation as placing orders "with the fraudulent intent of paying for the securities only if their market value had increased by the date payment was due." *A.T. Brod & Co.*, 375 F.2d at 395. The misrepresentations in both cases, therefore, fall within the Second Circuit's requirement that the misrepresentation concern either the value of the security or the consideration received.[3] Again, no misrep-

---

**1.** Defendants acknowledge that "district courts within the Second Circuit require generally that the alleged misrepresentation or omission concern the value of the securities (or the consideration received by the customer)." (Def. Mem. at 14)

**2.** Bankers life cited *A.T. Brod & Co.* for the proposition that the alleged misrepresentation need not "involve the type of fraud usually associated with the sale or purchase of securi-

ties." *Bankers Life*, 404 U.S. 6, 11 n. 7, 92 S.Ct. 165.

**3.** Plaintiffs also cite *Marbury Management, Inc. v. Kohn*, 629 F.2d 705 (2d Cir.1980), in which defendant misled the plaintiff into believing that he was a broker and "portfolio management specialist" rather than a trainee. The plaintiff purchased and retained securities in reliance on the defendant's mis-

resentation or either the value of a security or the consideration received is present here.

## III.

 Because I have dismissed plaintiffs' federal law claims, only their state law claims remain. "In general, where the federal law claims are dismissed before trial, the state law claims should be dismissed." *Marcus v. AT & T Corp.*, 138 F.3d 46, 57. Accordingly, I decline to exercise jurisdiction over plaintiffs' state law claims.

\*　　\*　　\*　　\*　　\*　　\*

For the reasons stated above, the complaint is dismissed.

SO ORDERED.

representations. *See id.* at 708. The Court described the case as "not one in which a material misrepresentation of an element of value intrinsic to the worth of the security is shown to be false . . .," *id.*, and rejected a rule which would "limit[ ] recovery for fraudulently induced securities transactions to instances of fraudulent representations about the value characteristics of the securities dealt in," *id.* at 710 n. 3. Moreover, unlike *Bankers Life* and *A.T. Brod & Co.*, *Marbury* was not a case in which the misrepresentation related to the consideration received. It at least appears, therefore, to find a violation of Section 10(b) for a misrepresentation which concerns neither the value of the security nor the consideration received.

Subsequently, however, the Second Circuit interpreted the misrepresentation in *Marbury* as relating to the securities' value: "although the misrepresentation was not related to intrinsic investment characteristics of the stock involved, it did directly relate to the investment quality of the stock because had the plaintiffs known that their 'broker' was trainee who had no expertise, they would not have accepted his recommendations. In essence, the stock in question did not have the value represented by the 'broker.'" *Bennett v. United States Trust Co.*, 770 F.2d 308, 314 (2d Cir.1985). As read in *Bennett*, *Marbury* can also be reconciled with the Second Circuit's "in connection with" requirement.