Wade T. VERGES, Russ M. Herman,
William F. Schenker, Sr., Ronald
Natal, Stephen Scott Sewell

v.

Wayne BABOVICH, Nelson Chatelaine,
Friends of Wayne Babovich, Ray Baas,
Jodi Anthony Moscona, Baptiste M.
Brunner, Craig E. Collier, Joseph P.
Mahoney, Louis V. Nugent, Melville Z.
Wolfson, Earl L. Weiser, Gerald T.
Mayer, Walter Dabbs, Crescent City
Bank.

Civ. A. No. 86–2382.

United States District Court,
E.D. Louisiana.

Sept. 2, 1986.

Warren J. Pickle and Thomas Weymann of Nelkin & Pickle, Metairie, La., for plaintiffs.

Russ M. Herman, New Orleans, La., in pro. per.

L. Eades Hogue and Joseph C. Wilkinson, Jr. of Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, La., for defendants.

## ORDER & REASONS

FELDMAN, District Judge.

Before this Court is Defendants' Motion to Dismiss the complaint for failure to state a claim upon which relief can be granted.

The suit is brought under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq. Several pendent state claims are also alleged.

Defendants say that the RICO claim is deficient in three essential respects: 1) failure to allege a "pattern of racketeering activity"; 2) failure to allege, with the requisite specificity, predicate acts by each defendant, a conspiracy, and an interstate nexus; and, 3) failure to allege fraud with particularity, as required by F.R.C.P. 9(b). Further, defendants assert that without an independent jurisdictional basis, the pendent claims should be dismissed for want of subject matter jurisdiction.

Defendants' Motion is GRANTED in part and DENIED in part.

The law instructs that in reviewing the sufficiency of a complaint, its allegations are to be accepted as true and viewed in a light most favorable to the plaintiff. The complaint must stand "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–6, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The Fifth Circuit has directed that "[t]his standard exhorts us to excuse mere artless drafting and to overlook superfluous argument in the interest of locating the substance of the pleader's claim". *Jamieson v. Shaw,* 772 F.2d 1205, 1209 (5th Cir.1985). The need to do so has been especially acute in civil RICO cases, where the claims advanced are often based upon exotic and complex legal theories and involve rather cavalier factual assertions. See *Moore v. A.G. Edwards & Sons, Inc.,* 631 F.Supp. 138, 145 (E.D.La. 1986). This case presents no exception.

Plaintiffs claim that they have been defrauded because of a conspiracy perpetrated by the 1986 re-election committee of former City Councilman, Wayne Babovich, and the Crescent City Bank. Mr. Babovich has since been relieved of his councilmanic office.

Specifically, plaintiffs allege that in the months preceding the 1986 City Council election in New Orleans, defendants, Wayne Babovich, Nelson Chatelaine, Ray Baas, and Jodi Masconi formed the "Friends of Wayne Babovich" as a campaign chest for the Councilman's anticipated re-election effort. Defendants then solicited financial backing from several members of the local business community, including the plaintiffs. In keeping with local political rites, defendants requested that plaintiffs execute promissory notes in favor of the re-election committee, and specifically represented that such notes would be used strictly as guarantees for loans made to finance the re-election of Councilman Babovich, and for no other purpose. Further, plaintiffs maintain they understood that the borrowing of funds against such notes would not take place unless and until it became clear that there would be a contested election.

Based upon such representations, plaintiffs, in addition to many others, signed promissory notes. But Babovich never ran for re-election. Instead, he resigned from

the City Council, and then spent some time in jail in August, 1985 for conspiracy to commit mail fraud (in violation of 18 U.S.C. § 371).

Plaintiffs heard nothing further regarding the disposition of the notes they signed until the Spring of 1986, when defendant, Crescent City Bank, under the direction of Baas, who was Chairman of the bank's Board of Directors, Chief Executive Officer, and President of the bank, Chatelaine, who was a member of the Board, defendant, Walter Dabbs, and the remaining defendant directors, sent requests to the plaintiffs demanding that they furnish current financial statements and information pertaining to the promissory notes which had been pledged and were held by the bank (without prior notice to plaintiffs). The bank, acting through its officers and directors, has since tried to collect on the notes and threatened collection proceedings, allegedly on promissory notes which defendants solicited in connection with an election that never took place.

Plaintiffs assert that at the time the funds were being solicited, defendants knew Babovich was being investigated by law enforcement authorities concerning allegations of wire fraud and extortion. Plaintiffs contend that on the pretext that such funds would be used for the re-election campaign, defendants fraudulently procured financing from the plaintiffs, with the undisclosed intention of using the funds to defray prior campaign debts, personal business expenses, legal defense costs, and otherwise, all for the personal benefit of the defendants. Plaintiffs further allege that the defendants did, in fact, use the funds for such purposes.

Plaintiffs claim that the bank, and each of its officers and board members, took possession of the notes, knowing that they had been procured by fraud and had been illegally pledged, and continued their participation in the fraud by seeking to collect on the notes and by threatening collection proceedings. Further, plaintiffs charge

that the bank has used the money illegally obtained by pledging the notes to acquire other loans and has received illegal profits from such activities.

## THE RICO ACCUSATION

In addition to providing some enlightening insights into a colorful political lore, the complaint and the Motion to Dismiss offer, more importantly, an opportunity to focus on some of the debate about RICO today, and to offer a constructive comment or two.

▪ Although plaintiffs assert that defendants' conduct is a violation of each of the substantive subsections of the RICO statute, it is clear from the allegations of the complaint, that only subsection (c) of the statute, and a conspiracy to violate that subsection under subsection (d), are implicated. See 18 U.S.C. § 1962(a) through (d). Specifically, plaintiffs contend in Paragraphs 20 and 30 of the complaint that since April, 1985 through the present, all of the defendants were associated as an "enterprise" engaged in, or the activities of which affected, interstate commerce, and conducted or participated, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.[1] This allegation mirrors the language and states a classic violation of 18 U.S.C. § 1962(c). Plaintiffs' zeal to invoke subsections (a) and (b) of Section 1962 as additional bases for relief under RICO is perhaps understandable, but the facts alleged simply do not support such claims. Specifically, the thrust of a violation of 18 U.S.C. § 1962(a) is a claim that defendants have used income derived from a pattern of racketeering activity "in acquisition of any interest in, or the establishment or operation of, any enterprise" which is engaged in interstate commerce. No such allegation appears in the complaint. Similarly, 18 U.S.C. § 1962(b) speaks to a situation in which the defendants, through a pattern of racketeering activity, have acquired or

1. While plaintiffs separately allege that the re-election committee and the bank may also be viewed as constituting "enterprises", the RICO theory remains the same.

maintained "any interest or control of any enterprise" engaged in interstate commerce. No allegations of "interest" or "control" are set forth in plaintiffs' lengthy complaint. Accordingly, given the absence of allegations essential to state a claim under Section 1962(a) and (b), the claims under those subsections are dismissed.

While this Court is mindful of the injunction that the RICO statute is to be " 'liberally construed to effectuate its remedial purposes'", *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. ——, 105 S.Ct. 3275, 3286, 87 L.Ed.2d 346 (1985), the Court is equally sensitive to the need to rationally curb the RICO sprawl, and to force litigants to define the RICO theory upon which they rely. Plaintiffs have done so; it is clear Court that plaintiffs state a claim for relief under Section 1962(c), and a conspiracy to violate that subsection under Section 1962(d). Further, in their Opposition to the Motion to Dismiss plaintiffs make plain that their theory of recovery is premised upon Section 1962(c).

In *Sedima*, the Supreme Court held that in order to state a claim under § 1962(c), the plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity". 105 S.Ct. at 3285. See also, *Alcorn County, Miss. v. U.S. Interstate Supplies*, 731 F.2d 1160, 1167–68 (5th Cir.1984). Defendants do not question the "enterprise" element; rather, they initiate their attack by asserting that plaintiffs' RICO claim fails to allege the requisite "pattern of racketeering activity". Recently, a good deal of judicial debate has

centered on this element, and some conceptual chaos has been the result.[2] Trial courts, told to do the defining, don't have much to go by.

### (a) *"A Pattern of Racketeering Activity"*

In *Sedima*, the Supreme Court seemed to issue a challenge to lower courts to develop a more rigorous interpretation of the RICO "pattern" requirement. 105 S.Ct. at 3285 n. 14, 3287. Ever since, lower courts have been responding to the challenge. See, *Greenhaw v. Merrill Lynch, et al.*, 785 F.2d 1274, 1280 n. 7 (5th Cir. 1986). The jurisprudence is growing. Its clarity is itself a topic of discussion.

Defendants urge that this case is controlled by such decisions as *Superior Oil Co. v. Fulmer*, 785 F.2d 252 (8th Cir.1986); *Frankart Distributors, Inc. v. RMR Advertising*, 632 F.Supp. 1198 (S.D.N.Y.1986); and *Northern Trust Bank/O'Hare N.A. v. Inryco, Inc.*, 615 F.Supp. 828 (N.D.Ill.1985). These are the restrictive cases in the literature. They hold that if each of the alleged predicate acts was committed as part of only one criminal episode, scheme or transaction, the requisite "pattern" does not exist. In short, one scheme does not a pattern make. Defendants characterize plaintiffs' claim as alleging but one criminal scheme on the part of the defendants, lacking in continuity. This Court disagrees with defendants' characterization.

The complaint involves a multitude of criminal transactions over an extended period of time. Plaintiffs allege that each of the defendants committed numerous acts

---

**2.** See *Systems Research, Inc. v. Random, Inc.*, 614 F.Supp. 494, 497 (N.D.Ill.1985) (two related predicate acts deemed sufficient to constitute a "pattern"); *Superior Oil Company v. Fulmer*, 785 F.2d 252, 257 (8th Cir.1986) (a single scheme does not constitute a "pattern" in spite of the number of predicate acts); *Frankart Distributors, Inc. v. RMR Advertising*, 632 F.Supp. 1198, 1201 (S.D.N.Y.1986) (proof of multiple illegal transactions required to establish a "pattern"); *Fleet Management Systems, Inc. v. Archer-Daniels-Midland Company*, 627 F.Supp. 550, 560 (C.D.Ill.1986) (a "pattern" requires at least two criminal episodes, regardless of the number of predicate acts); *Allington v. Carpenter*, 619 F.Supp. 474, 478 (C.D.Calif.1985) (predicate acts must occur in multiple criminal episodes in order to constitute a "pattern"); *Papai v. Cremosnik, et al.*, 635 F.Supp. 1402 (N.D.Ill.1986) (multiple episodes plus ongoing course of conduct deemed sufficient to constitute a "pattern"); *Louisiana Power and Light Company v. United Gas Line Company*, 642 F.Supp. at 781, 809–10 (E.D.La. 1986) (two predicate acts inflicting multiple independent harms held to constitute a "pattern"); *Torwest DBC, Inc. v. Dick*, 628 F.Supp. 163, 165 (D.Colo.1986) (the number of predicate acts is irrelevant; the finding of a "pattern" is dependent upon the nature of the conduct under all of the circumstances).

of mail fraud and wire fraud (18 U.S.C. §§ 1341 and 1343) in furtherance of the complicated scheme involving the fraudulent procurement and negotiation of the notes. The Court believes that these allegations speak precisely to that sort of "open-ended" continuous scheme "containing a multiplicity of predicate acts" which has been held to constitute a "pattern". See, *Temporaries, Inc. v. Maryland National Bank,* 638 F.Supp. 118, (D.Md. 1986).[3]

Further, this Court believes that the cases relied upon by the defendants do not apply to the facts alleged now. *Fulmer, RMR Advertising,* and *Inryco,* each involved a claim by a single plaintiff that he had been defrauded. The courts were unable to discern the requisite "pattern". Here, four plaintiffs claim that they have been defrauded, and there is the suggestion that many others may have been defrauded as well through defendants' efforts. These additional spokes in the wheel provide the requisite indicia to evince a "pattern". Unlike the single plaintiff model, we have here charges of a series of parallel and independent frauds on a number of persons. According to plaintiffs, they were each sought out by defendants, and each defrauded in turn. Common sense suggests a "pattern" is evident. That the means used to accomplish the alleged frauds are identical, is irrelevant. As one district court commented in addressing a similar challenge in a case involving several plaintiffs who had invested in a limited partnership, "the fact that several alleged victims with no prior relationship among them were the targets of the alleged fraud establishes the requisite pattern of racketeering activity". *Ackerman, Jablonski, Porterfield & De Ture v. Alhadeff,* Civil RICO Report, Vol. 2, p. 7 (W.D. Wash. April 16, 1986) [Available on WEST-LAW, DCTU database]. See also, *Volckmann v. Edwards,* 642 F.Supp. 109 (N.D.

Calif.1986) (fraud committed on several investors in a limited partnership held to constitute a "pattern"). The fact that plaintiffs' claim necessarily implicates a "multitude of independent harms" further supports the finding of a "pattern". See, *Louisiana Power & Light Company v. United Gas Line Company,* 642 F.Supp. 781, 809–10 (E.D.La.1986). Finally, the fact that the alleged "pattern" involves the infiltration of legitimate business entities, reflects precisely that sort of invidious stealth meant to be snared by the statute. As the Senate Report explained in elaborating upon the "pattern" element:

> "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than two acts of 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce a pattern".

See, S.Rep. No. 91–617, 91st Cong., 1st Sess. 158 (1969).

Construing plaintiffs' allegations as true, as we must for purposes of this Motion, and all inferences in their favor, the Court concludes that the complaint adequately alleges a "pattern of racketeering activity". Indeed, although use of RICO often results in abuse, this complaint clearly alleges the stuff of RICO.[4]

### (b) *The Predicate Acts, Conspiracy, and Interstate Nexus*

■ Defendants assert that the plaintiffs have failed to adequately allege that they have each participated in the affairs of the enterprise through a "pattern of racketeering activity". Defendants complain the plaintiffs have failed to sufficiently state the elements of each offense that constitutes a predicate act. Although plaintiffs' complaint is hardly a model of artful pleading, the Court finds that the

---

3. *Temporaries, Inc.* holds, for this Court, the common sense solution to what ought to constitute a pattern of racketeering activity. It strikes at the kind of continuous criminal stealth targeted by RICO.

4. The extent of damages might still be, however, another matter even if plaintiffs are successful on their theories of liability.

allegations are sufficient to withstand attack. Plaintiffs allege facts sufficient to describe multiple violations of the mail and wire fraud statutes by all of the defendants (18 U.S.C. §§ 1341 and 1343), which requires only that it appear from a fair reading of the complaint that each of the defendants have devised or participated in a scheme to defraud, and used the mails and wires in furtherance of that scheme. This, plaintiffs have done. Further, with respect to defendants Dabbs and Baas, plaintiffs separately allege a violation of the Hobbs Act (18 U.S.C. § 1951) as a predicate offense. Specifically, plaintiffs allege that they received threats from Baas and Dabbs to cause them to make payments on the notes. While defendants correctly point out that plaintiffs do not allege that the threats were of physical harm, the law in the Fifth Circuit is clear that a fear of economic harm may be sufficient to support a violation of the Hobbs Act. See, *United States v. Quinn,* 514 F.2d 1250, 1267 (5th Cir.1975), *cert. den.,* 424 U.S. 955, 96 S.Ct. 1430, 47 L.Ed.2d 361 (1976) ("Fear of economic loss is a type of fear proscribed by part (b)(2) of the Hobbs Act".) Accordingly, the complaint is not defective for failure to plead the requisite predicate acts.

Defendants also charge that the plaintiffs have failed to adequately plead a conspiracy in violation of 18 U.S.C. § 1962(d). The Court disagrees. A RICO conspiracy requires proof of an agreement among defendants "to participate, directly or indirectly, in the affairs of an enterprise *through the commission of two or more predicate crimes". United States v. Elliot,* 571 F.2d 880, 903 (5th Cir.1978), *cert. den.,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978). Each defendant is alleged to have committed specific acts of fraud through the "enterprise" in furtherance of its aims. Plaintiffs' allegation of an agreement among the defendants to commit a substantive RICO violation under 18 U.S.C. § 1962(c) is enough.

Finally, defendants contend that plaintiffs have failed to allege a sufficient nexus between the activities of the "enterprise" and interstate commerce. However, "[t]he nexus with interstate commerce required by RICO is 'minimal'". *R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350, 1353 (5th Cir.1985). Where, as here, the plaintiffs allege that the defendants repeatedly used instrumentalities of interstate commerce in furtherance of their illegal objectives, this element is satisfied. *Id.* That a bank (patently involved in interstate commerce) is alleged to be associated with the "enterprise", makes the interstate link self-evident.

### (c) *Pleading Fraud With Particularity Under F.R.C.P. 9(b)*

In a last effort to have the complaint dismissed, defendants urge that the complaint falls short of the pleading requirements for fraud imposed by F.R.C.P. 9(b) because of plaintiffs' failure to allege such items as the precise date, time, place, and the specific identity of the persons who made each particular misrepresentation to the plaintiffs as part of the scheme to defraud.

Although defendants correctly note that some courts have required that such details be alleged, it is equally clear that "nothing in the rule requires them" and that "[p]laintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud". *Seville Industrial Machinery v. Southmost Machinery,* 742 F.2d 786, 791 (3rd Cir.1984). As this Court has previously noted, in rejecting an identical challenge to a RICO claim, what is critical is that the plaintiffs identify the " 'circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations' ". *John Meade v. Doug Weber, et al,* 647 F.Supp. 954, 956 (E.D.La.1986) (quoting *Walling v. Beverly Enterprises,* 476 F.2d 393, 397 (9th Cir. 1973)). Dismissal is not the only mandated solution. "Under the federal rules, it is enough that a complaint put the defendant on notice of the claim against him. It is the

function of discovery to fill in the details and of trial to establish each element of the cause of action". *Seville, supra* at 790. See also, *Systems Research, Inc. v. Random, Inc.*, 614 F.Supp. 494, 497–500 (N.D. Ill.1985). As *Walling* teaches, "Rule 9(b) does not require nor make legitimate the pleading of detailed evidentiary matter". 476 F.2d at 397.

The Court has reviewed plaintiffs' complaint and concludes that the plaintiffs have identified the circumstances constituting fraud in a manner sufficient to give the defendants fair notice of the claim.

Accordingly, for all of the foregoing reasons,

IT IS ORDERED:

Defendants' Motion to Dismiss is GRANTED with respect to plaintiffs' claims asserted under 18 U.S.C. § 1962(a) and (b) for failure to state a claim upon which relief can be granted; defendants' Motion is otherwise DENIED.