Joseph H. HODGES, Plaintiff,

v.

H & R INVESTMENTS, LTD., a Mississippi Limited Partnership, et al., Defendants.

No. EC87–133–S–D.

United States District Court, N.D. Mississippi, E.D.

Aug. 31, 1987.

Gary L. Geeslin, Columbus, Miss., for plaintiff.

Dewitt T. Hicks, Jr., Gholson, Hicks & Nichols, Columbus, Miss., Howard W. Neiswender, Tanner, Guin, Ely & Lary, P.C., Tuscaloosa, Ala., for defendants.

## OPINION

SENTER, District Judge.

This cause comes before the court on the defendants' motion to dismiss under Feder-

al Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, the court denies the motion as not well taken. An appropriate order shall issue.

### Facts

Because this cause is before the court on a motion under Fed.R.Civ.P. 12(b), the court must take the allegations in the opposing pleadings as true. *Miree v. DeKalb County*, 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Espinoza v. Missouri Pacific R. Co.*, 754 F.2d 1247 (5th Cir.1985) The challenged complaint must be allowed to stand "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). This court must "excuse mere artless drafting and ... overlook superfluous argument in the interest of locating the substance of the claim." *Jamieson v. Shaw*, 772 F.2d 1205, 1209 (5th Cir.1985).

The facts as alleged in the complaint are as follows: Joseph Hodges is an area manager for State Farm Insurance Companies in Columbus, Mississippi. In the early summer of 1985, Munford Rhett approached Hodges for a list of names of other State Farm Agency managers so that Rhett could invite them to Baldwin County, Alabama, to attempt to sell them a condominium in a complex (Sea Oats Condominiums) which Rhett was developing with Thomas R. Howard. Hodges gave Rhett this list. Rhett subsequently made a long-distance telephone call from Gulf Shores, Alabama, to Columbus, Mississippi, and told Hodges that the agency manager list was a good list of prospects. Rhett also said that the partners would have difficulty selling the units to other State Farm agency managers if Hodges did not own a condominium in the complex. Rhett then promised Mr. Hodges that Rhett and Howard would give Hodges a unit.

Hodges flew to Gulf Shores on July 1, 1985, to discuss the transfer of the unit. Rhett and Howard told the plaintiff that they would finance a down payment for him on a five-year note and that they had made arrangements with the First National Bank of Jackson (now Trustmark Bank) to finance the remainder of the price of the condominium and with Merchants and Farmers Bank in Columbus to finance the furnishings. Rhett and Howard represented to Hodges that they would guarantee a minimum monthly rental income and that they would themselves finance the down payment loan. Hodges made inquiries as to the insurance of the project, and Rhett assured Hodges that the insurance would cost $250.00 on his unit. Neither of the partners disclosed to Hodges that the assets of the project had been mortgaged to finance the insurance on the project and that any payment made by Hodges to the owners association would go first to repayment of this unauthorized, undisclosed loan before any future insurance would be purchased. Rhett also told Hodges that purchase of the unit included a fee simple title in beach front access to the Gulf of Mexico. This representation was materially false in that title to the waterfront portion of the property was retained by one of the defendants and condominium purchasers were granted a mere nonexclusive right-of-access over that property.

Rhett also represented to Hodges that Rhett and Howard had agreed to reduce Hodges' down-payment note by $1,000.00 for every unit sold from the list of names that Hodges provided if only Hodges would allow them to use his name in their sales pitch. Rhett further told Hodges that Rhett and Howard would give Hodges a "take back" agreement so that Hodges could back out of the deal at no cost if he later wanted out of the deal. Hodges then agreed to buy the unit since the rentals would be guaranteed and he could back out within a year at no cost. He stated that he was entering the arrangement solely to help his friend, Rhett. Rhett and Howard then requested a financial statement from Hodges. When Hodges told Rhett and Howard that he might not be able to qualify for a loan with Trustmark and did not wish to be embarrassed by a rejection, Rhett and Howard personally guaranteed Hodges' loan with that bank. On July 3, 1985, Rhett and Howard delivered a signed agreement to Hodges that within one year

of the closing on the condominium, they would, at Hodges' option, assume the original loans on the property if it were deeded back to them.

Additional representations were made as to liability of unit owners for storm damage to common property, as to monthly dues on the unit, and as to Rhett's intention to remain in the area until all the units were sold. Each of these representations subsequently proved to be false. Three months after Hodges entered into the agreement, the unsold units in the complex were sold at auction for less than half the amount which Hodges had financed. Hodges became dissatisfied with his investment in the complex because of the numerous misrepresentations and tendered timely notice of the exercise of his option to terminate the agreement. Rhett and Howard refused to accept the tender of the property. Trustmark Bank has subsequently initiated foreclosure proceedings against the condominium unit.

On May 1, 1987, Hodges filed this action before this court alleging (1) that the condominium was a security and that the actions of Rhett, Howard, the corporation Howard and Rhett, Inc. (a Delaware Corporation), and the partnership H & R Investments, Ltd., in selling the condominium were in violation of Sections 12 (15 U.S.C. § 77*l*) and 17 (15 U.S.C. § 77q(a)) of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)), and Rule 10b–5 promulgated thereunder; (2) that the actions of the above defendants were in violation of Section 901(a) of the Racketeer Influenced and Corrupt Organizations Act of 1970 (18 U.S.C. § 1962); (3) that the actions of the above defendants and Trustmark National Bank violated the common law of frauds; and (4) that Rhett, Howard, and Trustmark breached a fiduciary duty owed to Hodges. The plaintiff has subsequently conceded the lack of the right to a private action under 15 U.S.C. § 77q(a).

### Contentions of the Parties and Conclusions of Law

The defendants contend that this court lacks jurisdiction to hear this complaint.

The plaintiff has alleged two separate and distinct federal causes of action: that (1) the condominium was a security and that the conveyance of that interest violated several sections of the Securities Act of 1933 and Securities Exchange Act of 1934 and (2) the actions of the defendants violated the RICO statute. The defendants first contend that the condominium was not a security and that this court, accordingly, lacks jurisdiction under 15 U.S.C. § 77v(a).

1. **Claims of violations under the Securities Act of 1933 and the Securities Exchange Act of 1934.**

a. **A condominium unit and collateral agreements guaranteeing minimum rental receipts, providing for a reduction in price for future sales from a list which the purchaser provides the seller, and providing for a "takeback" of the property in the event the purchaser is dissatisfied constitute a security.**

■ A condominium can qualify as a security if the unit and any collateral agreements taken together have the characteristics of an investment contract under 15 U.S.C. § 78c(a)(10). *Cameron v. Outdoor Resorts of America, Inc.*, 608 F.2d 187 (5th Cir.1979). An investment contract under that section has been defined as:

a contract, transaction, or scheme whereby a person invests his money in [1] a common enterprise and is led to [2] expect profits [3] solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise.

*SEC v. W.J. Howey Co.*, 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244, 1249 (1946) (numerals added). The defendants state that this condominium cannot be a security because (1) Hodges bought the unit with the intent of assisting a friend and not of making a profit, (2) that Hodges' use of the unit was not materially restricted, and (3) that an agreement consisting of the right to rentals from a single apartment with a single owner cannot constitute a common enterprise.

A contract to purchase a condominium is not an investment contract "when a purchaser is motivated by a desire to use or consume the item purchased." *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 852–53, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621, 632–33 (1975). There must be an expectation of either capital appreciation or a participation in earnings from the investment. *Id.*

Securities and Exchange Commission Release No. 33–5347 states that an offering of a condominium unit constitutes an offering of a security if the condominium is offered and sold with emphasis on the economic benefits to be derived from the efforts of others. SEC Release No. 33–5347, 17 CFR § 231.5347. The release states such a situation exists (1) where there is a rental arrangement coupled with a sales promotion focused on economic benefits from rentals, (2) where there is an offer of participation in a rental pool arrangement, or (3) where the unit owner's use is materially restricted in that he must hold the unit available for rental for certain periods of the year and must use an exclusive rental agent. The release cautions developers that "there may be situations, not referred to in this release, in which offering the [condominium or other real property] interests constitutes an offering of securities."

Hodges stated in his complaint that he initially flew to Gulf Shores with the expectation that he was going to be "given" a condominium unit, that he had no desire to purchase the condominium for personal use, and that his primary reason for entering into the agreement was to assist his friend Rhett. The arrangements suggested in the complaint are carefully designed to appear to insure that Hodges would not lose money on the condominium purchase and would, perhaps, make a little profit. Howard and Rhett established a "take back" arrangement by which Hodges could terminate the agreement at no cost within one year. Howard and Rhett guaranteed rental receipts. Howard and Rhett agreed to pay Hodges $1,000.00 for each person on the list of agency managers subsequently purchasing a condominium.

Rhett represented that he intended to live in the area and sell the condominiums over a considerable span of time to protect the market value of the units. There is an obvious sales emphasis on the economic benefits in the form of capital appreciation, rebates from future sales, and rentals to be derived by Hodges solely from the efforts of Rhett and Howard. The allegations of the complaint show that Hodges initially expected a gift, was unwilling to enter into the agreement if faced with substantial financial risk, and entered into the agreement only when Howard and Rhett promised to insulate him from most financial risk. The entire structure of the transaction appears to have been motivated by financial considerations.

There was no restriction on Hodges' use of the condominium. SEC Release 33–5347 discussed restrictions as an indicia of the existence of a security but not as a necessary precondition. The functional purpose of the rental pooling arrangements or restrictions coupled with exclusive agency in the examples discussed by the SEC is a demonstration of the financial purpose of the transaction. Here, the guarantee of minimum rentals by Howard and Rhett serves the same purpose. Although a restriction would make the financial purpose of the transaction more clearly apparent, it is not necessary for a finding that the sale of the condominium and its collateral agreements constituted a security.

Nor is the defendants' contention that there is no common enterprise apposite. The defendants state that Hodges could expect returns only from the rents of his apartment. This contention ignores the rebate on the down payment loan to be made on any purchase of condominium units by the other State Farm agency managers and the fact that the purpose of this transaction was nominally to facilitate just such sales. It also ignores the promise by Rhett to stay in the area and to develop another larger project in the area which stressed capital appreciation of the units' value. The value of the units themselves, irrespective of any rental prospects, was "inextricably tied" to the efficacy of Howard's and Rhett's future sales efforts. The fact that

similar units sold at auction for less than half the amount Hodges financed less than three months after Hodges purchased his unit is evidence of that tie. Such a tie constitutes a common enterprise. *SEC v. Koscot Interplanetary, Inc.,* 497 F.2d 473, 478 (5th Cir.1974). The court can only conclude that the collateral agreements taken together with the unit itself constitute an investment contract which is a security under 15 U.S.C. § 78c(a)(10).

### b. The complaint contains sufficient factual allegations to show that it was timely filed.

■ The defendant states that the complaint was not timely filed for enforcement of a claim under 15 U.S.C. § 77*l* (2). The statute of limitations for a claim under that statute is 15 U.S.C. § 77m. Section 77m of 15 U.S.C. provides that a claim under 15 U.S.C. § 77*l* (2) must be filed "within one year after the discovery of the untrue statement or omission or after such discovery should have been made by the exercise of reasonable diligence ... [i]n no event shall any such action be brought to enforce a liability created under ... section 77*l* (2) more than three years after the sale." The complaint clearly states that the deed was tendered back to the defendants one year from the date of closing, a time which must have been after July 1, 1986. The falsity of the key misrepresentation, that the defendants would release Hodges from liability on a specific date, could not be known to Hodges until the "take-back" agreement was breached. The complaint was filed May 1, 1987, ten months after the earliest possible completion of the fraud and well within the statute of limitations under 15 U.S.C. § 77m. The complaint was timely filed, and this fact is reasonably inferable from the complaint.

■ The defendant alleges that this is insufficient and that compliance with the 77m statute of limitations must be affirmatively plead in an action under section 77*l*. That argument has not previously been considered in this circuit. In *Cook v. Avien, Inc.,* the First Circuit stated that "when the very statute which creates the

cause of action also contains a limitation period, the statute of limitation not only bars the remedy but also destroys the liability, and therefore the plaintiff must plead and prove facts showing that he is within the statute. This has been consistently followed under the Securities Act." 573 F.2d 685 (1st Cir.1978) (quoting from 3 L. Loss, Securities Regulations ch. 11C(1)(f) at 1744 (2d ed. 1961)). Other circuits have made similar holdings. *See Toombs v. Leone,* 777 F.2d 465 (9th Cir.1985); *John Hopkins University v. Hutton,* 488 F.2d 912 (4th Cir.1973). But the duty is to plead facts showing that the claim is within the statute and not to plead conclusory allegations to that effect. *See Hagert v. Glickman, Lurie, Eiger & Co.,* 520 F.Supp. 1028, 1033 (D.Minn.1981). This Hodges has done.

### c. Allegations of fraud were pleaded with sufficient particularity under Fed.R.Civ.P. 9(b).

■ Claims brought under section 10(b) and Rule 10b–5 must comply with the requirement of particularity of pleading found in Fed.R.Civ.P. 9(b). *Denny v. Barber,* 576 F.2d 465 (2d Cir.1978); *Gottreich v. San Francisco Investment Corp.,* 552 F.2d 866 (9th Cir.1977). Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of the mind may be averred generally." The requirement is that the plaintiff must plead facts giving rise to an inference of fraud with sufficient particularity to apprise the defendants of the misconduct complained of so as to enable them to prepare a defense. *Gross v. Diversified Mortgage Investors,* 431 F.Supp. 1080, 1087 (S.D.N.Y.1977), *aff'd mem.* 636 F.2d 1201 (2d Cir.1980). The circumstances which must be plead to meet the requirement of particularity are the time, place, and contents of the false misrepresentations, the person making the representation and what he obtained from the plaintiff through the misrepresentation. *See* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1297 (1986).

The complaint before this court meets this requirement of particularity. All of the misrepresentations were made in Gulf Shores, Alabama, on July 1, 1985. The complaint specifically states which individual defendant made each individual misrepresentation and what fact was misrepresented thereby. The complaint makes clear that the various misrepresentations in combination induced Hodges to enter into the agreement and that the defendants obtained $120,500.00 from mortgage proceeds thereby.

The defendants contend that the complaint insufficiently pleads scienter. Fed.R.Civ.P. 9(b) states that "[m]alice, intent, knowledge, and other conditions of the mind may be averred generally." The plaintiff has exceeded this burden by alleging facts which show scienter in several of the misrepresentations. For example, Rhett told the defendant that the property included a fee simple interest in the beach front when Rhett was aware that the beach front was owned by either Howard, himself, or one of the businesses which they controlled, and that a mere license to use that strip of beach was granted to purchasers of the condominiums. Rhett told Hodges that the insurance premiums on the condominium unit would be less than $250.00 per year when Rhett was aware (1) that the owners association was liable for the mortgage given on the property to secure insurance before the units were sold, (2) that the mortgage had to be paid before additional coverage could be obtained, and (3) that the mortgage was so substantial in amount that, taken with premiums for current insurance, it guaranteed that the amounts to be paid for insurance to the association for insurance would be substantially in excess of $250.00. When facts tending to show scienter are plead, a conclusory allegation that there was scienter is not necessary.

The defendants further contend that the complaint insufficiently alleges its aiding and abetting claims. In allegations of conspiracy, and presumably in aiding and abetting allegations, the courts have insisted that the plaintiff exceed the short and plain notice requirements of Fed.R. Civ.P. 8(c). This does not require a conclusory allegation that a given party is a primary violator. What is required is that the complaint allege sufficient facts to enable the defendants to determine what aiding and abetting they are accused of. *Rose v. Arkansas Valley Environmental & Utility Authority,* 562 F.Supp. 1180, 1204 (W.D. Mo.1983). To ultimately prove aiding and abetting liability, plaintiff must show that (1) there was a primary violator who had committed a security law violation; (2) the aiding and abetting party knew of that violation, and (3) the party nonetheless knowingly and substantially aided the violator. *See Admiralty Fund v. Tabor,* 677 F.2d 1297 (9th Cir.1982); *Hagert v. Glickman, Lurie, Eiger & Co.,* 520 F.Supp. 1028, 1037 (D.Minn.1981). This is not the standard applicable at the pleading stage. To adequately plead an aiding and abetting claim, the complaint need only be sufficiently specific to identify for the defendant the act which he is alleged to have aided and abetted. *Rose,* 562 F.Supp. at 1204. But, the plaintiff has met even the more difficult standard of proof in its allegations in paragraph 36:

> To the extent that any defendant did not directly engage in the violations described in this Count, each such defendant, with general awareness or knowledge of the actions of the other defendants, substantially assisted the other defendants in committing the violations.

This clearly meets the standard of pleading knowledge under Fed.R.Civ.P. 9(b). The aiding and abetting claims are adequately pleaded.

Even were the aiding and abetting claims inadequately pleaded, no individual defendant would be dismissed as a result of the dismissal of these claims. Rhett and Howard are each alleged to be principal violators. Rhett and Howard did these acts in selling a condominium unit belonging to H & R Investments. Howard and Rhett, Inc., is the general partner of H & R Investments. Under principles of agency law, both H & R Investors and Howard and Rhett, Inc., are liable as principal violators. *See Lawler Mobile Homes, Inc. v. Tarver,*

492 So.2d 297, 305 (Ala.1986) ("A corporation or employer will be liable for the torts of its employee committed while acting in the line and scope of his employment even though the corporation or employer did not authorize or ratify such acts and even if it expressly forbade them.).[1]

Trustmark would have neither principal liability nor liability as an aiding and abetting party had the pleading been inadequate, but a separate state law claim arising from the same facts has been asserted against Trustmark which is still within the scope of this action. Trustmark would not be dismissed as a defendant even if the pleadings were inadequate.

### d. Reasonable reliance, due diligence, causation, and damages.

▮▮▮ The defendants also contend that the plaintiff has failed to plead reasonable reliance upon the misrepresentations, due diligence in discovering the misrepresentations, causation of the purchase by the misrepresentations, and damages caused by the misrepresentation. The contentions are remarkable in light of the plainly plead statements of the complaint. Paragraph 22 of the complaint alleges both reliance and causation when it states:

> Plaintiff explained to Munford Rhett at that time that he really had no interest whatsoever in personally owning a unit of the Sea Oats Condominium, but that since the rental would be guaranteed and that they would agree to take back the unit at no cost to him, Plaintiff would purchase a unit in order to help his friend Munford Rhett. For that reason, and no other, Plaintiff agreed to purchase Unit H–201 of the Sea Oats Condominium at and for the sum of $120,-500.00.

Paragraph 35 of the complaint alleges due diligence on the part of the plaintiff:

> At all times in connection with the purchase of this security, Plaintiff did not disregard known risks, risks so obvious to him that he must have been aware of such risks, or risks so great as to make it highly probable that harm would follow.

Damages are alleged in that (1) plaintiff incurred an obligation of $120,500.00, (2) units similar to the unit which plaintiff purchased have been sold at auction for less than half of what the plaintiff paid for his unit, and (3) Trustmark has initiated foreclosure proceedings on Unit H–201, and plaintiff as mortgagee will be liable for any deficiency. As the duty of the plaintiff is to allege facts showing diminution in the value of his investment, the plaintiff must be held to have adequately met the burden of pleading damages. In sum, the complaint is sufficient as to all charges of securities violations.

### 2. Claims of violations under the Racketeer Inspired Corrupt Organizations Act of 1970.

The defendants contend that the plaintiff has failed to allege sufficient predicate acts to constitute a RICO violation. In *R.A. G.S. Couture v. Hyatt,* 774 F.2d 1350 (5th Cir.1985), the Fifth Circuit held that two long-distance telephone calls or two mailings in furtherance of a single scheme were sufficient to establish a pattern of racketeering activity. The Fifth Circuit recently backed away from this position in *Smoky Greenshaw Cotton v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 785 F.2d 1274, 1281–82 n. 7 (5th Cir.1986) (citing district court cases from other circuits requiring multiple schemes or continuing threat of criminal activity following the Supreme Court's decision in *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)).

Since *Smoky Greenshaw Cotton,* three district court decisions in the Fifth Circuit have attempted to define "pattern". In *Louisiana Power and Light v. United Gas Pipeline,* 642 F.Supp. 781, 807–09 (E.D.La. 1986), the court held that the statute did not require a multiplicity of schemes or of

---

1. The court notes in passing that there appears to be a substantial conflict of laws question present. Two Mississippi residents are alleged to have defrauded a third Mississippi resident in the State of Alabama on a sale of land in Alabama. It is unclear whether the law of Alabama or Mississippi should be applied to the agency relationship between Rhett and Howard and H & R Investments.

plaintiffs, but rather required that "a RICO plaintiff must show that the defendant's actions constituted related, multiple, and ongoing criminal episodes, each with independent harmful effect, to recover RICO damages." The mailing of two invoices to a single plaintiff, each of which contained two misrepresentations and each of which was paid by the plaintiff, was there found to constitute a "pattern" of racketeering activity. In *Verges v. Babovich,* 644 F.Supp. 150, 152 (E.D.La.1986), a pattern was found to exist where four separate plaintiffs were defrauded through several misrepresentations in a single scheme. In *Brent Liquid Transport, Inc. v. GATX,* 650 F.Supp. 467 (N.D.Miss.1986) (Biggers, J.), the court ruled that a RICO pattern required multiple schemes, dismissing a complaint which alleged multiple acts against a single plaintiff in a single scheme.

■ The cause *sub judice* shows the presence of multiple schemes and multiple injuries to the single plaintiff. The initial telephone call to Hodges offered to 'give' him a condominium unit. The purpose of this 'gift' was to assure other buyers from the agency manager list that Hodges had purchased a unit and trusted the developers. At least one person from the list made such a purchase. This is one scheme. The second scheme was to induce Hodges to purchase this unit rather than receive it as a gift. Multiple misrepresentations were made to Hodges about the property following a trip to Gulf Shores which Hodges relied upon in investing in the property. Hodges then suffered damages from (1) the incurring of the purchase price of the unit and (2) the imposition of the undisclosed liability for the insurance mortgage. The pleading therefore suggests the existence of a pattern of racketeering activity.

3. **There is a separate and independent ground of federal jurisdiction in the complaint, and the pendent claims are therefore not dismissed.**

■ The court has found that the complaint has adequately pleaded claims under § 12(2) of the Securities Act of 1933,

§ 10(b) of the Securities Exchange Act of 1934, and the Racketeer Inspired and Corrupt Organizations Act of 1970. The pendent claims arising from a "common nucleus of operative fact" are therefore also within the proper jurisdiction of this complaint.