OPINION OF THE COURT
Alexander, J.
The question presented for our review is whether services rendered by plaintiff to defendant in connection with a Lebanese legal matter constituted the unlawful practice of law in New York such that the contract for such services is illegal and therefore unenforceable (Spivak v Sachs, 16 NY2d 163). We agree with the courts below that plaintiffs conduct did not constitute the unlawful practice of law in New York within the meaning of Judiciary Law § 478 and that, therefore, the contract is not void on this ground.
I
The undisturbed factual determinations of the trial court demonstrate that plaintiff, an attorney admitted to practice in Lebanon but not in any jurisdiction in the United States, resides in Washington, D.C., and maintains an office at Georgetown University where he serves as a Middle Eastern law consultant. In April 1982, defendant’s granddaughter Jeneane Aoude was abducted by her natural father from her home in Newton, Massachusetts, in violation of a Massachusetts decree awarding custody to Jeneane’s mother, and defendant’s daughter, Mary Aoude. Jeneane was subsequently located in Lebanon. Referred by the pastor of Mary’s church, defendant and Mary Aoude, then residing together in Phoenix, New York, sought plaintiffs advice on whether Lebanese courts would honor the Massachusetts custody decree. Plaintiff, in a letter addressed to Mary in Massachusetts, rendered his legal opinion that Lebanese courts would honor that Massachusetts decree. He billed Mary $2,000 for this service and was paid in full.
*704 Defendant and Mary Aoude remained in regular contact with plaintiff after he rendered this opinion and, as the trial court found, he subsequently agreed to assist them in getting the child back, while defendant agreed to pay his fee and expenses. The bulk of plaintiff’s services were performed in Lebanon, where he confirmed the child’s exact location, instituted four separate court actions against Mary’s ex-husband, and ultimately assisted Mary in spiriting the child out of Lebanon and back to the United States. Plaintiff’s activities in the United States included the commencement of investigations through his Beirut office, accompanying Mary and her Massachusetts attorney to a Massachusetts court to obtain a copy of the judgment awarding Mary custody which would be recognized in Lebanon, authenticating documents so that they might be used in Lebanon, helping Mary complete a power of attorney form, and assisting her in applying for a Lebanese visa. Plaintiff’s only contacts with New York during this time, however, were his frequent phone calls to Mary arid defendant in Phoenix, New York, to report on and discuss the progress of the case. Additionally, after Mary returned from Lebanon with Jeneane, plaintiff made a single visit to Phoenix to return luggage Mary had left in Lebanon. While in Phoenix, he also discussed his bill with defendant. Plaintiff subsequently mailed a bill for his services to defendant in New York.
When defendant failed to pay the bill, plaintiff commenced this action, asserting causes of action in contract and quantum meruit. Defendant asserted three affirmative defenses: that defendant did not contract with plaintiff as Mary was his client; that enforcement of any contract between the defendant and plaintiff was barred by the Statute of Frauds as there was no signed writing evidencing defendant’s intent to answer for the debt of another (General Obligations Law § 5-701 [a] [2]); and that inasmuch as plaintiff had engaged in the unlawful practice of law (Judiciary Law § 478), any contract for his services was unenforceable. Special Term denied defendant’s motion for summary judgment on the three asserted defenses, but granted partial summary judgment to defendant, limiting plaintiff’s possible recovery to the agreed 75% reduction in his fee such that his maximum recovery would not exceed $22,350 plus $6,000 disbursements. In granting judgment for plaintiff, the trial court held that Special Term’s earlier decision was the law of the case as to the unlawful practice defense, but also independently determined that *705 plaintiffs conduct did not constitute the unlawful practice of law in New York. The court also found that defendant had personally and independently contracted with plaintiff for his services. The Appellate Division modified the judgment to give defendant credit for $5,500 she had previously paid to plaintiff, and as so modified, affirmed. We now affirm.
II
On this appeal, defendant continues to argue that she never contracted with plaintiff and that any contract she may have made with plaintiff is unenforceable absent a signed writing evidencing her intention to pay her daughter’s debt (General Obligations Law § 5-701 [a] [2]). The trial court’s factual finding that defendant personally and independently contracted with plaintiff is dispositive of both these issues. That finding, undisturbed by the Appellate Division and having support in the record, is beyond our review (Loughry v Lincoln First Bank, 67 NY2d 369, 376; Bliss v Ach, 56 NY2d 995, 998; see generally, Cohen and Karger, Powers of the New York Court of Appeals § 108 [rev ed]). Defendant’s contention that plaintiff may not sue to enforce a contract for legal services in New York because plaintiffs conduct in New York constituted the unlawful practice of law in violation of Judiciary Law § 478 is likewise without merit.
Judiciary Law § 478 provides: "It shall be unlawful for any natural person to practice or appear as an attorney-at-law or as an attorney and counselor-at-law for a person other than himself in a court of record in this state, or to furnish attorneys or counsel or an attorney and counsel to render legal services, or to hold himself out to the public as being entitled to practice law as aforesaid, or in any other manner * * * without having first been duly and regularly licensed and admitted to practice law in the courts of record of this state, and without having taken the constitutional oath.” Its purpose is to protect the public in this State from "the dangers of legal representation and advice given by persons not trained, examined and licensed for such work, whether they be laymen or lawyers from other jurisdictions” (Spivak v Sachs, 16 NY2d, at 168, supra [construing former Penal Law § 270, the predecessor of Judiciary Law § 478]). As a matter of public policy, a contract to provide services in violation of the statute is unenforceable in our State courts (Spivak v Sachs, 16 NY2d, at 168, supra; see also, McConnell v Commonwealth *706 Pictures Corp., 7 NY2d 465). Moreover, violation of Judiciary Law § 478 is a misdemeanor (Judiciary Law § 485) and its provisions also may be enforced in civil actions by the Attorney-General or a bar association formed in accordance with the laws of this State (Judiciary Law § 476-a).
It is settled that the "law” contemplated by Judiciary Law § 478 includes foreign as well as New York law (Matter of New York County Lawyers Assn. [Roel], 3 NY2d 224). In Roel, we held that former Penal Law § 270, the predecessor of Judiciary Law § 478, prohibited the activities of a Mexican attorney who admittedly practiced foreign law in his New York office by advising members of the public on Mexican law (Matter of New York County Lawyers Assn. [Roel] 3 NY2d, at 230, supra). The practice of Lebanese law likewise falls within the purview of the statute. The issue, however, is whether plaintiff’s activities in New York appropriately can be considered the "practice” of Lebanese law.
The "practice” of law reserved to duly licensed New York attorneys includes the rendering of legal advice as well as appearing in court and holding oneself out to be a lawyer (Spivak v Sachs, 16 NY2d, at 166, supra; People v Alfani, 227 NY 334). Additionally! such advice or services must be rendered to particular clients (Matter of New York County Lawyers Assn. v Dacey, 21 NY2d 694, revg on dissenting opn below 28 AD2d 161 [publishing a book on "How to Avoid Probate” does not constitute the unlawful "practice” of law]) and services rendered to a single client can constitute the practice of law (Spivak v Sachs, 16 NY2d 163, supra).
Spivak held that a California attorney engaged in the unlawful practice of law by assisting an acquaintance in New York with her divorce. In so doing, the California attorney became substantially involved in the client’s New York affairs —spending 14 days in New York attending meetings, reviewing drafts of a separation agreement, discussing the client’s financial and custody problems, recommending a change in New York counsel and, based on his knowledge of New York and California law, rendering his opinion as to the proper jurisdiction for the divorce action and related marital and custody issues (id., at 167). While holding that these activities plainly constituted the "practice” of law, we also recognized that the statute (then Penal Law § 270) should not be construed to prohibit "customary and innocuous practices.” We noted that: "recognizing the numerous multi-State transac *707 tions and relationships of modern times, we cannot penalize every instance in which an attorney from another State comes into our State for conferences or negotiations relating to a New York client and a transaction somehow tied to New York” (Spivak v Sachs, 16 NY2d, at 168, supra [citations omitted]).
Here, unlike Spivak, plaintiffs contacts with New York were, as Supreme Court found, incidental and innocuous. Although plaintiff engaged in substantial litigation in Lebanon, where he was licensed, and even arguably provided legal services while in Washington, D.C., and Massachusetts, his contact with New York consisted entirely of phone calls to defendant and her daughter Mary in New York in which they discussed the progress of the legal proceedings in Lebanon. There was but a single visit to Phoenix, New York, after the successful completion of his legal services. We conclude that, in the circumstances of this case, phone calls to New York by plaintiff, an attorney licensed in a foreign jurisdiction, to advise his client of the progress of legal proceedings in that foreign jurisdiction, did not, without more, constitute the "practice” of law in this State in violation of Judiciary Law § 478. (Accord, Gonzalez y Barredo v Schenck, 287 F Supp 505, 525, revd on other grounds 428 F2d 971.) To adopt a per se rule such as advanced by defendant would impair the ability of New York residents to obtain legal advice in foreign jurisdictions on matters relating to those jurisdictions since the foreign attorneys would be unable to recover for their services unless they were licensed both in New York as well as in the foreign jurisdiction.
We do not have occasion to decide, however, whether a contract for legal services, rendered in a foreign jurisdiction to a New York client and which constitute the illegal practice of law in that foreign jurisdiction, is enforceable in this State. Although it is undisputed that plaintiff is not a licensed attorney in either Washington, D.C., or Massachusetts, defendant has failed to allege or prove that plaintiffs conduct in either place was unlawful under the law of that jurisdiction.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs.