ERNST & COMPANY, PaineWebber,
Inc., and Sharpe Capital, Inc.,
Plaintiffs,

v.

MARINE MIDLAND BANK,
N.A., Defendant.

No. 95 Civ. 8337 (RWS).

United States District Court,
S.D. New York.

March 21, 1996.

Salon, Marrow & Dyckman, L.L.P. (Louis J. Maione, of counsel), New York City, for Plaintiffs.

Drinker Biddle & Reath (Andrew C. Kassner, Gary R. Battistoni, Michael W. McTigue, Jr., of counsel), Philadelphia, PA, for Defendant.

## OPINION

SWEET, District Judge.

Defendant Marine Midland Bank ("Marine") moves to dismiss the first claim in the complaint filed by Plaintiffs Ernst & Company ("Ernst"), PaineWebber, Inc. ("PaineWebber") and Sharpe Capital, Inc. ("Sharpe") (collectively the "Plaintiffs") for failure to state a claim under Section 10 and Rule 10b–5 of the Securities Exchange Act of 1934. In addition, Marine moves to dismiss the remaining state claims on the grounds that there is no jurisdictional basis for them other than Title 28, Section 1367(c) of the United States Code. For the reasons that follow, the motion to dismiss is granted.

### Parties

Ernst is a Delaware corporation with its principal place of business in New York, New York and is generally engaged in the business of buying, selling and brokering securities.

PaineWebber is a Delaware corporation with its principal place of business in New York, New York and is generally engaged in

the business of buying, selling and brokering securities.

Sharpe is a New York corporation with its principal place of business in New York, New York and is generally engaged in the business of buying, selling and brokering securities.

Defendant, Marine Midland, is a national banking association with offices in New York, New York.

### Prior Proceedings

The Plaintiffs filed this action on September 28, 1995. The complaint alleged violations of the 1934 Act and additional state law claims.

This motion to dismiss was filed on December 11, 1995 and by consent of the parties was adjourned until March 6, 1996. Oral argument was heard on March 6 and the motion was considered fully submitted at that time.

### Facts

For the purpose of this motion to dismiss the allegations of the complaint are taken as true. According to the complaint, each of the three plaintiffs did business with Armor Pension Managers ("Armor"), IILP, d/b/a Westside Fund ("Westside"). Armor was a California limited partnership with offices located in Los Angeles, California. Armor was the "alter-ego" of Stanley I. Berk ("Berk"), Armor's general partner, who was a professional money manager. Armor/Westside are often referred to, hereinafter, as "Berk's alter-egos".

Blech & Company ("Blech"), not a party in this action, is a brokerage firm in New York. At all relevant times herein, Blech was a broker-dealer and underwriter of securities, and was regarded as a major market maker in over-the-counter biotechnological securities (the "Securities").

According to the complaint, on September 22, 1994 Blech failed to open for business. With the closing of Blech, prices of approximately one dozen Securities, for which Blech appeared to be the primary market maker, plummeted, leaving a number of brokerage houses holding hundreds of thousands of shares of these Securities which had been purchased by Berk. Berk apparently never paid for these Securities.

Berk and Armor had a contractual relationship with Marine, whereby Marine served as a custodian and paying agent for these customers and operated as the bank which would pay for the Securities purchased by Berk and Armor, holding them on its customers' behalf.

Berk or his alter egos, in five separate transactions, purchased many hundreds of thousands of shares of various of the Securities from Ernst on September 13, 1994 with settlement dates on September 26, 1994. According to the complaint, "[p]ayment was due from Marine Midland, although no payment was ever made." In each of the five transactions, the complaint alleges that Marine Midland issued an affirmation to Ernst usually within three days of the purchase date, but that on the settlement dates Midland denied that it knew of the trade. In each instance Berk or his alter-ego failed to pay for the trades. Ernst estimates its losses at $1,215,688.75 from these transactions.

The complaint describes eight transactions involving Berk or his alter-egos and Paine-Webber. Each of the transactions occurred between September 14 and 19, 1994 with settlement dates between September 26 and 29. In each case it is alleged that Marine failed to pay for the Securities and issued an affirmation within three days of the trade. PaineWebber estimates its net loss at $1,468,694.

Sharpe describes two transactions on September 14, 1994 in which Berk or his alter-ego purchased 35,000 shares of a security, with settlement dates of September 21. In the first case, Marine accepts the trade of the 21st of September, but never makes the payment. In the second case, Marine accepts the trade of the 22nd of September, but denies it on September 27, 1994 for "insufficient funds." Sharpe estimates its losses at $178,000.

The complaint alleges that Marine was aware prior to September 21 that its customer had no available funds. Marine notified Berk and his alter egos on September 23 that their accounts were overdrawn and had been

for a number of days and that unless it received "good funds" to cover the overdraft position by 10:45 AM on that day, Marine would be "Dking[1] all trades for their accounts."

The complaint in this action alleges Rule 10b–5 fraud against Marine for engaging, "directly and indirectly, in a scheme to defraud the Plaintiffs by ... issu[ing] Affirmations that funds were, or would be available to consummate the trades made by Berk ... when, in fact, Marine Midland knew or should have known, that funds were not, and would not be available to complete these Delivery Versus Payment ("DVP") transactions."

The complaint also alleges state law causes of action for common law fraud, breach of contract, negligent misrepresentation, negligence, and promissory estoppel.

### Discussion

#### I. Standards for Evaluating a 12(b)(6) Motion

On a Rule 12(b)(6) motion to dismiss, the factual allegations of the complaint are presumed to be true and all factual inferences must be drawn in the plaintiffs' favor and against the defendants. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989); *Dwyer v. Regan,* 777 F.2d 825, 828–29 (2d Cir.1985). Accordingly, the factual allegations set forth and considered herein are taken from the Plaintiffs' Complaint and do not constitute findings of fact by the Court. They are presumed to be true only for the purpose of deciding the present motion to dismiss.

Rule 12(b)(6) imposes a substantial burden of proof upon the moving party. A court may not dismiss a complaint unless the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2905–06, 106 L.Ed.2d 195 (1989); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Conley*

*v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### Section 10–b and Rule 10b–5

Section 10 of the 1934 Act makes it "unlawful for any person ... (b) [t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest for the protection of investors." 15 U.S.C. § 78j(b). Rule 10b–5, a general anti-fraud provision, promulgated by the Commission in 1942 states:

Employment of manipulative and deceptive devices.

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

17 C.F.R. 240.10b–5.

In order to state a claim under these sections, the Court of Appeals has held that the complaint must allege that "in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's actions caused him injury." *Bloor v. Carro, Spanbock, Londin,*

---

**1.** According to the complaint "Dk" means that the party to whom the Securities are being delivered does not know the trade.

*Rodman & Fass,* 754 F.2d 57, 61 (2d Cir. 1985).

 Specifically, the Court of Appeals has held that misrepresentations or omissions involved in securities transactions, but not pertaining to the securities themselves, cannot form the basis of a Section 10b or Rule 10b–5 claim. *Chemical Bank v. Arthur Andersen & Co.,* 726 F.2d 930, 943 (2d Cir. 1984), *cert. denied* 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984). The "in connection with" requirement mandates that the alleged fraud concern the "fundamental nature of the [securities]: namely, characteristics and attributes that would induce and [sic] investors to buy or sell the particular [securities]." *Manufacturers Hanover Trust Co. v. Smith Barney, Harris Upham & Co.,* 770 F.Supp. 176, 181 (S.D.N.Y.1991). Assuming that the affirmation sent by Marine told the broker dealer either that there was or would be funds available to effectuate the purpose, the affirmation does not implicate the "characteristics" or "attributes" of any particular security, and thus a claim under this section has not been stated.

Plaintiffs rely on *A.T. Brod & Co. v. Perlow,* 375 F.2d 393 (2d Cir.1967), decided before the *Chemical Bank* case for the proposition that a defendants fraudulent failure to pay for securities ordered through another broker states a claim under Section 10(b). While this may be true, the facts of *Brod* can be distinguished from this case. In *Brod* the defendants were alleged to have engaged in a scheme whereby they placed orders for securities with the fraudulent intent of paying only if those had appreciated by the time payment was due. There is no claim that there was fraud involved in the purchase of the stocks at issue here. The relationship of the affirmations to the sale of the Securities is peripheral.

Additionally, it has long been held that in suits brought under Section 10(b) and Rule 10b–5, "the plaintiff must show both loss causation—that the misrepresentation or omissions caused the economic harm—and transaction causation—that the violation in question caused the [plaintiff] to engage in the transaction in question." *Bennett v. United States Trust Co.,* 770 F.2d 308, 313 (2d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986); *see Citibank, N.A. v. K–H Corporation,* 968 F.2d 1489, 1495 (2d Cir.1992). The transaction causation is not pled in this case. " '[B]ut for' causation is not enough. The Act and Rule impose liability for a proscribed act in connection with the purchase or sale of a security; it is not sufficient to allege that a defendant has committed a proscribed act in a transaction of which the pledge of a security is part." *Chemical Bank,* 726 F.2d at 943.

Since the complaint alleges throughout that Plaintiffs sold the Securities prior to the affirmations, Plaintiffs have not and cannot allege that they relied on the affirmations to make the sales. "In a misrepresentation case, to show transaction causation a plaintiff must demonstrate that he relied on the misrepresentations in question when he entered into the transaction which caused him harm." *Schlick v. Penn–Dixie Cement Corporation,* 507 F.2d 374, 380 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975). Marine points to the *Litton Indus. v. Lehman Bros. Kuhn Loeb, Inc.,* 967 F.2d 742, 747–48 (2d Cir.1992) for the proposition that transaction causation should be presumed in plaintiff's favor. This is not a case, however, where the presumption of transaction causation is appropriate. In *Litton* and the sort of cases to which it applies, there is a question about whether or not a plaintiff in fact relied on misinformation provided by a defendant when he or she acted in a manner that caused the plaintiff harm. In this case there can be no claim that the actions of Marine formed the basis of the Plaintiffs' action, since they came after the sales at issue.

The other cases cited by Plaintiffs in opposition to the motion stand for the proposition that "[p]lausible allegations that defendants made specific promises to induce a securities transaction while secretly intending not to carry them out ... are sufficient under *Pross* [*v. Katz,* 784 F.2d 455 (2d Cir.1986) ] to state a claim for relief under Section 10(b)." *Luce v. Edelstein,* 802 F.2d 49, 56 (2d Cir. 1986). Plaintiffs' complaint does not state that the affirmations were issued prior to the sale of the Securities. Therefore, the cases

which describe situations in which defendants are alleged to have falsely induced plaintiffs into security transactions are inapposite.

The complaint fails to state a claim for securities fraud under Section 10b or Rule 10b–5 for all the reasons discussed above and shall be dismissed.

### The Remaining Claims will be Dismissed for Lack of an Independent Basis of Jurisdiction

A district court may decline to exercise supplemental jurisdiction when it dismisses all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Since the parties are in the earliest stages of this case and the federal claim has been dismissed leaving no independent basis of jurisdiction over the remaining state claims, they will also be dismissed. *See Purgess v. Sharrock,* 33 F.3d 134, 138 (2d Cir.1994); *Modeste v. Local 1199,* 850 F.Supp. 1156, 1167 (S.D.N.Y.1994), *aff'd* 38 F.3d 626 (2d Cir.1994).

### Conclusion

As described above, the motion to dismiss is granted.

This Opinion resolves the issues raised in Defendant's Motion (Doc. # 3).

It is so ordered.