UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Erika Gore Bacon


     v.                                    Civil No. 95-130-SD


Smith Barney Shearson, Inc.;
Leonard Morris


O R D E R


     This order addresses the issues raised by a number of
pending motions.


1.  Background[1]

     Plaintiff Erika Gore Bacon, a New Hampshire resident,
inherited an Individual Retirement Account (IRA) which had been
created by her late cousin Elizabeth Hayman.  The IRA was
established with defendant Smith Barney, Inc.,[2] and defendant
Leonard Morris was the account executive.

     Ms. Hayman deceased on December 11, 1992, and Morris

---

     [1]The facts set forth in this order are gleaned from the
allegations of plaintiff's amended complaint.  Document 13.

     [2]Smith Barney, Inc., is the current name of the brokerage
formerly known as Smith Barney Shearson, Inc.

requested of plaintiff, who agreed and granted to him, the right to continue as the account executive for the IRA. Defendants then advised plaintiff that the IRA was a non-probate asset, which should be transferred without delay into plaintiff's name. This advice was largely grounded on defendants' representations as to tax consequences.

Defendant Morris also advised plaintiff that certain stocks held by the IRA needed to be sold quickly to prevent losses and that such sales could not take place until the IRA was transferred into plaintiff's name. Plaintiff was advised that there were no other options available.

Plaintiff advised Morris that the IRA was to be used as a college fund for her children and that she had no immediate need for the funds. On several occasions plaintiff inquired of Morris as to the tax consequences of the transfer of the IRA to plaintiff, and on each such occasion plaintiff was advised that there would be no income tax due on the transfer because it was an inheritance.

Plaintiff also inquired of Morris as to the possibility of retaining the tax-deferred status of the IRA either by rolling it over into plaintiff's own IRA or by taking a gradual payment instead of a lump-sum payment. Defendant Morris responded to each such inquiry that it was not possible to retain the tax-

2

deferred status of the IRA, nor was it possible to take a gradual payout, because the IRA was a non-spousal IRA which could not be held within the IRA of the decedent.

Plaintiff's husband in at least three telephone inquiries of Morris asked him if it would be possible to retain the tax-deferred status of the IRA over a period of time, repeating that the tax-deferred status was plaintiff's top priority in light of plaintiff's estate plan. The reply of Morris to each such inquiry was that it was not possible to retain tax-deferred status of the IRA.

Relying on such advice, plaintiff agreed to a lump-sum distribution of the IRA. As suggested by defendants, the proceeds were placed in a trading account managed by defendants.

In March of 1994 plaintiff discovered that, contrary to defendants' representations, she would be liable for payment of federal income tax on the full amount of the IRA. Subsequently, plaintiff also learned that, again contrary to defendants' representations, a long-term payout of the IRA would have been possible in 1993. Because the transfer of the IRA had been made, however, a long-term payout was no longer available.

Plaintiff claims that the advice and representations of defendants on which she relied caused her to sustain damages resulting from the loss of the tax-deferred status of the IRA

3

funds.  She has brought suit under federal and state securities laws, together with advancing state law claims for violation of certain statutes, together with a claim for breach of contract.

2.  Discussion

   a.  Defendants' Motion to Dismiss, document 6

   Defendants have moved to dismiss the federal securities law claims, Counts I and II; the state securities law claim, Count IV; the claims of unauthorized practice of law, Count V; the claims of violations of the rules of the Securities and Exchange Commission (SEC), Count VI; and the claim of violation of the New Hampshire Consumer Protection Act, Count VII.  The plaintiff objects.  Document 8.[3]

   In ruling on a motion to dismiss, the court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-movant.  Washington Legal Found. v. Massachusetts Bar Found., 993 F.2d 962, 971 (1st Cir. 1993).  "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46

_____

   [3]Having moved and having been granted permission to do so, defendants have filed a reply memorandum, document 14, and plaintiff has filed a response thereto, document 16.

4

(1957)).


### 1. The Securities Law Claims (Counts I, II, IV)

Counts I and II of the amended complaint allege violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b),[4] and Rule 10b-5 of the SEC, 17 C.F.R. § 240.10b-5.[5] Count IV alleges a violation of the Blue Sky Law of

---

[4]Section 10(b) of the 1934 Act provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange--
> . . . .
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).

[5]Rule 10-b of the SEC provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a

New Hampshire, RSA 421-B:3.[6]  Common to each of these regulatory requirements is that the fraud alleged be "in connection with the purchase or sale of a security."

Defendants here contend that the challenged counts of the amended complaint fail this requirement, as plaintiff seeks, at most, recovery for the consequences of bad tax advice.  Plaintiff counters that the claim is of one integrated single transaction;

---

> material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

[6]RSA 421-B:3 provides:

> It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly:
> I.  To employ any device, scheme, or artifice to defraud;
> II.  To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
> III.  To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

6

i.e., the closing of the IRA and the opening of a new account in order that certain stocks might be sold.

Recovery under section 10(b) and Rule 10b-5 requires proof "in connection with the purchase or sale of a security, that the defendant, with scienter, falsely represented or omitted to disclose a material fact upon which the plaintiff justifiably relied." Estate of Soler v. Rodriquez, 63 F.3d 45, 53 (1st Cir. 1995) (internal quotations, citations, and emphasis omitted). However, "misrepresentations or omissions involved in securities transactions, but not pertaining to the securities themselves, cannot form the basis of a Section 10b or Rule 10b-5 claim." Ernst & Co. v. Marine Midland Bank, N.A., 920 F. Supp. 58, 61 (S.D.N.Y. 1996) (citing Chemical Bank v. Arthur Andersen & Co., 726 F.2d 930, 943 (2d Cir.), cert. denied, 469 U.S. 884 (1984)).

Plaintiff does not here claim that fraud on the part of the defendants was implicated in any fashion concerning the actual sale of the stocks, which sale took place after the IRA was transferred to her. The thrust of the complaint is that defendants misrepresented the tax aspects of the IRA transfer and that such misrepresentations, as distinguished from any sale of securities, were the cause of her financial losses. In short, she makes no claims that the alleged fraud concerned the "'fraudulent nature of the [securities]: namely, characteristics

7

and attributes that would induce and [sic] investors to buy or sell the particular [securities].'" Ernst & Co., supra, 920 F. Supp. at 61 (citing and quoting Manufacturers Hanover Trust Co. v. Smith Barney, Harris Upham & Co., 770 F. Supp. 176, 181 (S.D.N.Y. 1991)).

The "purchaser-seller" threshold which plaintiff must cross before she may assert a viable securities fraud claim under section 10(b) or Rule 10b-5 originated in Birnbaum v. Newport Steel Corp., 193 F.2d 461, 464 (2d Cir.), cert. denied, 343 U.S. 956 (1952), and its validity was established over twenty years later by the United States Supreme Court in Blue Chip Stamps v. Manor Drugstores, 421 U.S. 723, 749 (1975). The doctrine was originally set forth by the Second Circuit as follows:

> [S]ection 10(b) . . . was directed solely at that type of misrepresentation or fraudulent practice usually associated with the sale or purchase of securities rather than at fraudulent mismanagement of corporate affairs, and that Rule X-10B-5 extended protection only to the defrauded purchaser or seller.

Birnbaum, supra, 193 F.2d at 464.

In a more recent description, the Second Circuit has stated:

> The purpose of § 10(b) and Rule 10b-5 is to protect persons who are deceived in securities transactions--to make sure that buyers of securities get what they think they are getting and that sellers of securities are not tricked into parting with something for a price known to the buyer to be inadequate or for a consideration known to the buyer not to be what it purports to

8

be.

<u>Chemical Bank</u>, <u>supra</u>, 726 F.2d at 943.

The allegedly fraudulent misrepresentation of defendants concerning the tax consequences of immediate transfer of the IRA into plaintiff's name does not equate with a fraud that is in connection with the purchase or sale of a security. This advice had nothing to do with the ultimate sale of the stocks, a sale transaction of which, significantly, plaintiff does not here complain. Plaintiff's damages arose from the improper tax advice tendered her by the defendants, and to apply section 10(b) or Rule 10b-5 in these circumstances would extend the meaning of "in connection with" beyond that intended by Congress.

As section 10(b) and Rule 10b-5 are not available as a cause of action, it follows that claims grounded on New Hampshire RSA 421-B:3 must also fail. <u>Batchelder v. Northern Fire Lites, Inc.</u>, 630 F. Supp. 1115, 1122 (D.N.H. 1980). The motion to dismiss is granted as to Counts I, II, and IV of the complaint.

### 2. Claims of Unauthorized Practice of Law (Count V)

Invoking the provisions of statutes which prohibit the unauthorized practice of law in New Hampshire and New York, plaintiff seeks to recover damages for what she perceives to be defendants' violations of such statutes in rendering tax advice.

9

These claims must also be dismissed.

The New Hampshire Legislature has prohibited the unauthorized practice of law, RSA 311:7,[7] vesting enforcement of such prohibition in the New Hampshire Attorney General and the New Hampshire Bar Association. RSA 311:7-a;[8] State v. Settle, 124 N.H. 832, 480 A.2d 6 (1984); New Hampshire Bar Assoc. v. LaBelle, 109 N.H. 184, 246 A.2d 826 (1968).

The New York Legislature also prohibits the unauthorized practice of law, New York Jud. Law § 478, vesting enforcement of its statute in the New York Attorney General or a bar association formed in accordance with the laws of New York. N.Y. Jud. Law § 476-a; El Gemayel v. Seaman, 72 N.Y.2d 701, 533 N.E.2d 245 (1988).

---

[7]RSA 311:7 provides, "No person shall be permitted commonly to practice as an attorney in court unless he has been admitted by the court and taken the oath prescribed in RSA 311:6."

[8]RSA 311:7-a provides,

> I. Upon his own information or upon complaint of any person, including any judge or any organized bar association in this state, the attorney general may maintain an action for injunctive relief in the supreme or superior court against any person who renders, offers to render, or holds himself out as rendering any service which constitutes the unauthorized practice of law. Any organized bar association in this state may intervene in the action, at any stage of the proceeding, for good cause shown.
> II. The action may also be maintained by the bar association of the state of New Hampshire.

10

In cases like the one at hand, where there is no underlying common law cause of action, the statutory analysis undertaken does not cease with a decision that plaintiff is a member of the class protected by the statute and whether the harm inflicted is of the type intended to be protected against.  The key issue is whether there exists any explicit or implicit legislative intent that a violation of the statute should give rise to a tort cause of action.  Marquay v. Eno, 139 N.H. 708, 715, 662 A.2d 272, 277-78 (1995).  The court finds that, as to both the New Hampshire and New York statutes at issue, there is no expressed or implied intent on which to ground such a cause of action.  The motion to dismiss Count V is accordingly granted.

### 3.  Violation of SEC Rules (Count VI)

As the court has already ruled that the federal and state securities law claims cannot be maintained, it holds that plaintiff may not pursue her claims which are grounded upon SEC rules designed to supplement such causes of action.  The motion to dismiss Count VI is also granted.

### 4.  Applicability of the New Hampshire Consumer Protection Act, RSA 358-A (Count VII)

Defendants move to dismiss the claims based on RSA 358-A on

the alternate grounds that said claims are (a) barred by the relevant statute of limitations, RSA 358-A:3, IV-a; or (b) that the statute does not apply.  The court finds it necessary only to address the first of these defenses.

The original complaint was here filed on March 15, 1995. RSA 358-A:3, IV-a, makes the New Hampshire Consumer Protection Act inapplicable to "transactions entered into more than 2 years prior to the complaint."  Contrary to plaintiff's argument, the term "complaint" as used in the quoted section of the statute refers to the date of commencement of the action at law, and the language of the statute does not permit it to be tolled.  Catucci v. Lewis, 140 N.H. 243, 244-45, 665 A.2d 378, 379 (1995) (citing and quoting Zee-Bar, Inc. v. Kaplan, 792 F. Supp. 895, 901-92 (D.N.H. 1992)).

The March 15, 1995, complaint is grounded on actions plaintiff claims took place between December 13, 1992, and January 19, 1993.  Amended Complaint ¶¶ 12-27.  The attempt to invoke the provisions of RSA 358-A is therefore untimely, and the motion to dismiss Count VII is granted.

### b.  Plaintiff's Motion to Compel, document 12

Claiming that defendants have wrongfully failed to respond to certain interrogatories, plaintiff moves to compel answers

12

thereto. Defendants object. Document 15.

The core of the discovery dispute is that the interrogatories at issue, numbered 4, 5, 17, and 18, seek information concerning the dealings had by the decedent, Elizabeth Hayman, with the defendants regarding the establishment of the IRA and communications between Hayman and the defendants concerning "the types of investments that were appropriate for her financial situation." Interrogatory 18. Defendants argue that such information is not relevant to the claims here made by plaintiff and is not reasonably calculated to lead to the discovery of admissible evidence.

Rule 26(b)(1), Fed. R. Civ. P., states that a party "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . ." Relevancy under Rule 26 is construed broadly to encompass "any matter that bears on . . . any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

The court has broad power to control discovery, Santiago v. Fenton, 891 F.2d 373, 379 (1st Cir. 1989), and in so doing it can weigh discovery burdens against the likelihood of finding

13

relevant material.  <u>Mack v. Great Atlantic & Pacific Tea Co.</u>, 871 F.2d 179, 186-87 (1st Cir. 1989).

Defendants represent that they have provided plaintiff with "all the information and documents relating to the distribution plans, to the creation of the IRA account, and to the terms of the custodial agreement between Smith Barney and Ms. Hayman." Document 15, at 3.  Although omitted from plaintiff's filings concerning the interrogatories, it appears that defendant Morris has, in response to Interrogatory No. 17, stated that he has no recollection of any conversations with Ms. Hayman regarding the disposition of the IRA.

The estate of Ms. Hayman is not a party to this litigation. While an inquiry regarding "the types of investments that were appropriate for her financial situation", Interrogatory 18, might be relevant were the estate such a party, it is not relevant to the claims which are here made by this plaintiff.  The court finds and rules that the motion to compel must be denied, as it seeks information which is not relevant and not designed to lead to the discovery of admissible evidence within the purview of Rule 26(b)(1), Fed. R. Civ. P.

3.  Conclusion

For the reasons set forth, the court has granted defendants'

14

motion to dismiss Counts I, II, IV, V, VI, and VII of the amended complaint.  Document 6.  The court has also denied plaintiff's motion to compel.  Document 12.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

June 27, 1996

cc:  Carl D. Hanson, Esq.
     Wilbur A. Glahn III, Esq.
     David C. Boch, Esq.